[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10288

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Oct. 30, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00339-CR-CC-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN LAMAR TATE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 30, 2009)

Before CARNES, FAY and ALARCÓN,* Circuit Judges.

ALARCÓN, Circuit Judge:

--------

*Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Kevin Lamar Tate seeks reversal of the district's judgment of conviction and its sentencing decision. In a superseding indictment, Tate was charged with committing four counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), one count of bank robbery, in violation of § 2113(a), and four counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). He was convicted of four courts of armed bank robbery, three counts of using a firearm during a crime of violence, and one count of bank robbery. He was acquitted of one count of using a firearm during a crime of violence.

Tate contends that the district court erred in denying his motion to suppress the evidence, in failing to elicit from his counsel whether he had any *Batson*[1] objections, and in concluding that the evidence was sufficient to convince a rational trier of fact that he was the perpetrator of the crimes alleged in the indictment. He also argues that the district court erred in its sentencing decisions. We affirm because we are persuaded that Tate has failed to demonstrate that the district court erred.

## Part One

## The Judgment of Guilt

## I

---

[1]*Batson v. Kentucky,* 476 U.S. 79 (1986).

## The Evidence Produced During the Trial

### A

The facts, viewed in the light most favorable to the Government as the prevailing party, reflect that on June 26, 2007, a man robbed the Wachovia Bank branch located at 1270 Caroline Street (the "Caroline Street branch") in Atlanta, Georgia. He handed the teller a withdrawal slip and a separate note which stated "Give me all da (sic) money." Although he appeared to be unarmed, he threatened "to blow someone away or blow the place up.") The teller testified that the bank robber wore a royal blue outfit, sunglasses, and a blue hat which bore the initials "LA," and carried a blue cellular phone.

A bank surveillance photograph showed that the bank robber held the withdrawal slip in his left hand. A crime scene technician recovered two latent fingerprints on the withdrawal slip. One of them matched Tate's left thumb print. The robber escaped with $3,939.95 of the bank's money.

On August 9, 2007, a man robbed the Wachovia Bank located at 2349 Chesire Bridge Road (the "Chesire branch") in Atlanta, Georgia. The bank robber placed a firearm on the counter in front of the teller. He told her to get a bag and put money in it or he would shoot her. He also handed the teller two withdrawal slips. Although the robber wore sunglasses, he pulled them up when he spoke to

her. At trial the teller identified Tate as the perpetrator. She also identified the sunglasses and the "LA" hat recovered by Federal Bureau of Investigation ("FBI") agents at Tate's residence as those worn by him during the robbery. She further testified that the firearm recovered from Tate's residence was similar to the one used to rob her of $1200. An expert testified that one of the latent fingerprints on the withdrawal slips matched Tate's fingerprint.

A witness who had supervised Tate while he was employed at a Jiffy Lube shop testified that Tate was the person depicted in the Chesire branch surveillance tapes. He also stated that he had seen Tate wear a blue "LA" hat similar to the one recovered by the FBI at Tate's residence.

On the same date as the Chesire branch robbery, a man robbed the Wachovia Bank located at 4099 LaVista Road (the "LaVista branch") in Atlanta, Georgia, less than one hour later. A teller testified that the robber handed her an incomplete withdrawal slip and demanded that she give him her money. She complied and handed him $3,860.

The robber wore a blue baseball hat and sunglasses which he removed during the robbery. The teller identified the sunglasses recovered by the FBI as those worn by the robber. A police crime technician recovered seven latent prints from the withdrawal slip and ten latent prints from the surface of the bank counter.

4

One matched Tate's fingerprint.

On August 14, 2007, a man robbed the Wachovia Bank at 3860 Rockbridge Road (the "Rockbridge branch") in Decatur, Georgia. The robber wore a "Detroit" hat and sunglasses. He pointed a firearm at the teller, handed her a withdrawal slip, and demanded that she give him all of her money. She handed him $1,774.95. The teller testified that the "Detroit" hat, the sunglasses and the firearm later recovered by the FBI at Tate's home resembled those possessed by the man who robbed the Rockbridge branch bank. A crime scene technician recovered latent prints from the withdrawal slip. The record shows the withdrawal slip contained Tate's thumb print.

The bank teller and the Rockbridge branch manager saw the robber run out of the bank and enter an old white Chevrolet. Two weeks later, Tate was involved in a traffic accident. He was driving a 1982 white Chevrolet Monte Carlo. In a written statement that Tate furnished to the police, Tate wrote "da" instead of the word "the."

On September 8, 2007, a robbery occurred at the Best Bank, located at 2875 North Decatur Road, in Decatur, Georgia. A teller testified that the robber pointed a firearm at her, handed her a withdrawal slip, and demanded: "Give me all the money, no funny money." Although the robber wore sunglasses, the teller saw his

5

face because he kept lifting the sunglasses up. He also held a cell phone to his ear. At trial, she identified Tate as the robber. During the robbery, the robber wore a red t-shirt and a "Detroit" baseball hat. The teller identified the red t-shirt, the sunglasses, the Detroit baseball hat, and the firearm seized by the FBI agents from Tate's residence as those worn by the bank robber. The teller included a dye pack in the $860 that she handed to the robber. She counted to ten, and then followed him to the parking lot where she saw him throw it away after it exploded. As the robber drove away in a Chevrolet Cobalt, the teller recorded the license tag number as AEP4779. The getaway car had a green Enterprise Rent-A-Car ("Enterprise") sticker on it.

Enterprise's business records revealed that Tate rented a Chevrolet Cobalt on September 4, 2007. Tate listed his residence address as 1281 Brochett Road, Apartment 34, Clarkston, Georgia, and his employer as Jiffy Lube. An Enterprise employee picked Tate up at his residence. He also made and kept a copy of Tate's driver's license.

FBI Agent Ray Johnson testified that he took Tate's fingerprints and photographed the tattoos on his arms after his arrest on September 13, 2007. These photographs were introduced into evidence. Agent Johnson also testified that he examined the bank surveillance photographs of the perpetrator of the bank

6

robberies. He stated that the sleeves worn by the person depicted in the bank surveillance photographs were about three-quarter length and covered his biceps and his forearms below the elbow. He also testified that the interior of Tate's forearm was covered in some of the photographs by the front part of his body, or was completely obscured because it was below the teller's counter.

Andrea Elliott testified that she is an FBI physical scientist forensic examiner. She compared the latent prints recovered from the withdrawal slips handed by the robber to the tellers at the Caroline Street branch, the Chesire branch, the LaVista branch and the Rockbridge branch with the fingerprints taken from Tate by Agent Johnson on September 13, 2007. She testified that it was her opinion the latent prints were left by Tate.

## B

After the Government rested its case in chief, Tate's trial counsel made an oral motion for the entry of a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. He argued that the evidence was insufficient to demonstrate that Tate was the perpetrator of any of the crimes charged against him. After hearing the prosecutor's response to the motion, the district court denied the motion as to each count in the indictment.

## II

Tate did not testify. He called two witnesses in presenting his defense.

Wesley Alexander Evans, a former neighbor of Tate's, testified as his sole alibi witness. He stated that Tate was a guest at a birthday party on September 8, 2007, the date of the Best Bank robbery. Tate arrived at 9:00 a.m. Mr. Evans stated that the party did not end until that evening. Mr. Adams did not see Tate leave throughout that period. Mr. Evans also testified that he could not identify Tate in any of the bank surveillance photographs. Mr. Evans stated that Tate told him that in the summer of the year 2007 that he was attending a class on or near Moreland Avenue.

Mike Hummill testified that he is an investigator with the Federal Public Defenders Office. He took photographs on September 30, 2008 of tattoos on Tate's upper forearms. The photographs were introduced into evidence.

### III

Agent Greene was called as a rebuttal witness by the prosecution. He testified that the Caroline Street branch of Wachovia Bank is located near Moreland Avenue. This testimony was apparently offered to show that the school Tate attended in the summer of 2007 is near the Caroline Street branch, which was robbed on June 26, 2007.

### C

8

After both sides rested, Tate's counsel renewed his Rule 29 motion for a judgment of acquittal based on the same reasons he had previously articulated. The motion was denied.

## IV

### The Evidence Presented at the Suppression Hearing

At the suppression hearing, the Government introduced the following evidence. On September 8, 2007, the date the Best Bank was robbed, FBI Agent Michael Greene began his investigation. He discovered that the Chevrolet Cobalt used by the robber as a getaway car was owned by Enterprise. On September 10, 2007, an Enterprise employee gave Agent Greene Tate's home address.

On September 13, 2007, Agent Greene, along with other FBI agents, went to Tate's residence. They observed a Chevrolet Cobalt bearing the license number of the vehicle used to get away from the Best Bank robbery.

The agents knocked on the door and identified themselves. Tate opened the blinds and looked out the front window next to the door and then fled to the rear of the living room. The agents had not yet applied for an arrest or a search warrant. Because they feared that Tate might arm himself, the officers entered Tate's residence. Tate briefly resisted arrest. He was subdued and handcuffed.

After the entry, the officers obtained a warrant to search the getaway car and

Tate's residence. In searching the getaway vehicle, the officers observed a dye-stain on the driver's seat of the rental car. In searching Tate's residence, the officers discovered (1) a blue "LA" baseball cap, (2) a "Detroit" baseball cap, (3) a blue cellular telephone, (4) a red t-shirt, (5) blue jeans, (6) a pair of sunglasses, and (7) a firearm.

## V

### Discussion of the Merits of Tate's Appeal

### A

Tate challenges the denial of his motion to suppress the physical evidence seized from his residence pursuant to a search warrant. The district court excised information in the affidavit that referred to evidence obtained during the warrantless arrest of Tate. [2] He argues that the search warrant was unlawful because the agent's "general claim that robbery suspects 'are known to' store evidence of the crime in their homes" was insufficient to establish the required probable cause to search Tate's residence. In reviewing a district court's denial of a motion to suppress, this court examines the district court's findings of fact for clear error and its application of the law to those facts *de novo*. *United States v. Boyce*, 351 F.3d 1102-1105 (11th Cir. 2003).

---

[2]The district court also granted Tate's motion to suppress evidence obtained as a result of the warrantless arrest.

As this Court has previously stated, "probable cause to search a residence exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Jenkins*, 901 F.2d 1075, 1080-81 (11th Cir. 1990). "The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." *Id.* (citation and alteration omitted). "Evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence." Id. (citations and alteration omitted).

Here, Tate admits that probable cause existed for his arrest and that the affidavit in support of the search warrant, excluding the excised information, disclosed that the car parked at Tate's residence was the getaway car in one of the robberies and that the car had been leased to Tate. (Br. of Appellant 30). Records from Enterprise revealed Tate's home address, his driver's license number, and his date of birth. In addition, a veteran FBI agent advised the magistrate judge who issued the search warrant that, based on the agent's extensive experience investigating bank robberies, subjects are known to store evidence of their crime in their homes and vehicles. The district court properly concluded that the foregoing information was sufficient to establish probable cause for the issuance of a search

11

warrant.

**B**

Tate asserts that the district court erred in failing "to provide counsel an opportunity to provide *Batson* objections at the end of jury selection."[3] (Br. of Appellant 16). Tate's counsel failed to interpose a timely objection. Under the law of this Circuit, a defendant forfeits a *Batson* claim if he or she fails to object on this ground in the district court. *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993).

Tate argues that his counsel did not forfeit the right to present a *Batson* claim on appeal because "the district court failed to elicit or even provide counsel and opportunity to object." (Br. of Appellant 17). Instead, he contends that "the court simply seated the 12 chosen jurors in the box, excused the rest of the venire from the courtroom, and administered the oath to the jury." Id. To assert a *Batson* claim, a defendant must make a prima facie showing that the Government exercised a peremptory challenge on the basis of race. *Batson*, 476 U.S. at 96 ("[T]he defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from

---

[3]The Supreme Court instructed in *Batson* that "[t]he Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race . . . ." 476 U.S. at 86.

the venire members of defendant's race."). Tate's counsel failed to present any evidence to the district court that the Government violated the Equal Protection Clause in exercising its peremptory challenges.

Under the law of this Circuit, a *Batson* objection must be exercised before the venire is dismissed and the trial commences. *United States v. Rodriguez*, 917 F.2d 1286, 1288 n.4 (11th Cir. 1990). Tate requests that this court create a new rule mandating that district courts provide counsel with an opportunity to raise *Batson* objections, similar to the rule announced in *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990), overruled in part on other grounds by *United States v. Morrill,* 984 F.2d 1136 (11th Cir. 1993). However, we decline the invitation. The reasoning in *Jones* does not apply to *Batson* objections because the *Jones* inquiry is intended to provide the district court with an opportunity "to correct on the spot any error it may have made" at a sentencing hearing. *Id.* Here, there is no evidence that the district court made an erroneous ruling regarding the prosecution's peremptory challenges that required immediate correction.

Tate's counsel's failure to raise a *Batson* objection before the district court forfeited his right to raise this issue on appeal. "The contemporaneous objection rule fosters finality of judgment and deters 'sandbagging' saving an issue for appeal in hope of having another shot at trial if the first one misses." *United States*

13

*v. Pielago*, 135 F.3d 703, 709 (11th Cir. 1998). This Court has held that "[i]n the absence of plain error it is not our place as an appellate court to second guess litigants before us and grant them relief they did not request, pursuant to legal theories they did not outline, based on facts they did not relate." *Id.*

Tate's counsel has failed to cite any case that would support his contention that the district court had a duty to inquire of counsel whether he wishes to interpose a *Batson* objection. Accordingly, we conclude that Tate has failed to demonstrate that the trial court committed any error in failing to inquire of Tate's counsel whether he had any objection to the challenges.

## C

Tate contends that "even if viewed in the light most favorable to the government, the evidence presented at trial was insufficient to support the conviction of Mr. Tate." (Br. of Appellant 21). Tate does not argue that the Government failed to prove the elements of the crime of robbery, armed robbery, and the use of a firearm during a crime of violence that resulted in his conviction. Instead, he maintains that the Government failed to present "sufficient evidence that Mr. Tate himself was the robber of any of the five banks." (Br. of Appellant 21). He argues that there is a lack of substantial evidence from which a reasonable fact finder could find guilt beyond a reasonable doubt. We disagree.

14

In examining the sufficiency of the evidence, "we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices drawn in the government's favor." *United States v. Byrd*, 403 F.3d 1278, 1288 (11th Cir. 2005). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1990).

The record contains substantial evidence of Tate's commission of each of the charged offenses. Fingerprint evidence on withdrawal slips connected Tate to the commission of the robbery of the Carolina Street branch, the Chesire branch, the LaVista branch, and the Rockbridge branch. The tellers at the Chesire branch and the Best Bank also identified Tate as the bank robber at trial.

A teller and the manager of the Rockbridge branch identified the vehicle used by the robber as a getaway car as an old white Chevrolet. Tate was involved in a traffic accident two weeks later driving a 1982 white Chevrolet Monte Carlo.

A teller of the Best Bank saw the robber drive away in an Enterprise rental car. That car was found at Tate's residence on the day he was arrested.

Tate also argues the evidence was insufficient because only two of the five tellers identified him at trial as the bank robber. This argument ignores the principle that "in determining the sufficiency of the prosecution's case, we make

15

no distinction between circumstantial and direct evidence." *United States v. Navarro-Ordas*, 770 F.2d 959, 966 (11th Cir. 1985) (quoting *United States v. Belt*, 678 F.3d 547, 549 (5th Cir. Unit B 1982)). Tate also appears to assert that the jury could not reasonably infer from the fingerprint evidence on the withdrawal slips that he was the person who entered the banks and handed the withdrawal slips to the tellers. He has cited no authority for this proposition. We are persuaded that the jury was free to draw an inference from his modus operandi that Tate was the perpetrator of each offense. *See United States vs. McDowell,* 250 F.3d 1354, 1364 (11th Cir. 2001) (holding that a reasonable inference can be drawn from evidence showing *modus operandi*).

Tate argues that "[t]he most important evidence of [his] innocence is the collection of large tattoos on his firearms." (Br. of Appellant 25). He asserts that the fact that no teller mentioned his tattoos demonstrates that he did not rob any of the banks. Id. The Government presented evidence that supports an inference that the fact that Tate wore a three-quarter length shirt during the commission of each robbery, and held his arms next to his body, covered up his tattoos.

Tate also contends that we must reverse his conviction of the Best Bank robbery because he presented evidence that he was at a neighbor's home at the time the crime was committed. The jury heard this testimony, as well as the

16

Government's evidence that Tate rented a getaway car that was used by the person who committed the robbery. The jury found that the alibi testimony was not credible. That finding is binding on this Court. *See United States v. Harris*, 908 F.2d 728, 734 (11th Cir. 1990) ("Even if a defendant presents alibi testimony, the jury is free to disbelieve the evidence and reject the defense.").

## Part Two

## The Sentencing Decision

The district court sentenced Tate to serve a term of imprisonment of 240 months for the robbery of the Caroline Street branch (Count Nine), and 262 months on each of the robberies of the Chesire branch (Count One), the LaVista branch (Count Three), the Rockbridge branch (Count Five), and the Best Bank (Count Seven). Each of these sentences was ordered to be served concurrently. Tate was ordered to serve a term of 84 months for a violation of § 924(c)(1)(A)(ii) brandishing a firearm during the commission of a crime of violence as alleged in Count Two. This sentence was ordered to be served consecutively to the sentences imposed on Counts One, Three, Five, Seven and Nine. Tate was also sentenced to serve 300 months for a violation of § 924(c)(1)(A)(ii) as alleged in Count Six, Counts One, Two, Three, Five, Seven, and Nine, and a term of 300 months for a violation of § 924(c)(1)(A)(ii), as alleged in Count Eight, to be served

17

consecutively with the sentences imposed on Counts One, Two, Three, Five, Six, Seven, and Nine. The total sentence of imprisonment imposed by the district court was 946 months.

## A

Tate maintains that the district court erred as a matter of law in concluding that it was required to sentence him to consecutive terms of imprisonment for each of his convictions for violating § 924(c)(1)(A)(ii). He contends that the district court's construction of that statute "ignores the plain language of the 'except' clause." (Br. of Appellant 31). He argues that the "except" clause . . . makes clear that the law merely requires a total sentence of 25 years on the multiple violations of Section 924(c)." Id.

This Court reviews a question of statutory interpretation *de novo*. *United States v. Rahim*, 431 F.3d 753, 756 (11th Cir. 2005). In interpreting a statute, the court does not "look at one word or term in isolation, but instead [will] look to the entire statutory context." *United States v. Silva*, 443 F.3d 795, 798 (11th Cir. 2006) (citation omitted). A statute is interpreted in a manner that is consistent with the plain language of the statute, unless it would lead to absurd results. *Id.*

Section 924(c)(1)(A) in relevant part states:

> *Except to the extent that a greater minimum*
> *sentence is otherwise provided by this subsection or by*

18

*any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –*

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

. . .

(C) In the case of a second or subsequent conviction under this subsection, the person shall –

(i) be sentenced to a term of imprisonment of not less than 25 years; and

(ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

(D) Notwithstanding any other provision of law –

(i) a court shall not place on probation any person convicted of a violation of this subsection; and

(ii) *no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person*, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which

19

the firearm was used, carried, or possessed.

18 U.S.C. § 924(c)(1) (2006) emphasis added).

In his opening brief, filed on April 01, 2009, Tate requested that this Court adopt the interpretation of the "except" clause in *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008) and *United States v. Williams*, 558 F.3d 166 (2d Cir. 2009). (Br. of Appellant 33-34). The Second Circuit held in *Whitley* and *Williams* that a consecutive sentence cannot be imposed pursuant to § 924(c) where the defendant is subjected to a higher minimum sentence under another statute. *Whitley* 529 F.3d at 157, and *Williams*, 558 F.3d at 169-70.

In *United States v. Segarra*, 582 F.3d 1269 (11th Cir. 2009), this Court rejected the argument that § 924's "except" language "means that if his mandatory minimum sentence for the drug offenses is greater than the mandatory minimum for the firearm offense, the two sentences cannot run consecutively." *Id.*

This Court in *Segarra* noted that every circuit, other than the Second Circuit itself, to address this issue has rejected its interpretation of the "except" clause. *Id.* This Court joined the majority of circuits' holding that "[g]iven the plain language of *§ 924(c)* offenses, we do not interpret the "except" clause to limit consecutive sentences imposed for § 924(c)offenses and the underlying drug crimes." *Id. See United States v. Easter*, 553 F.3d 519, 524-27 (7th Cir. 2009) (affirming

20

consecutive sentences for convictions under §§ 841 and 924(c)), *petition for cert. filed*, Nos. 08-9560, 08-10584 (Mar. 26 and May 20, 2009); *United States v. Parker*, 549 F.3d 5 (1st Cir. 2008); *United States v. Jolivette,* 257 F.3d 581, 586-87 (6th Cir. 2001) (upholding consecutive sentences for armed bank robbery and firearm convictions); *United States v. Studifin*, 240 F.3d 415, 420-24 (4th Cir. 2001) (affirming sentences for robbery, § 924(c) offenses, and possession of a firearm by a convicted felon); *United States v. Alaniz*, 235 F.3d 386, 388-90 (8th Cir. 2000) (affirming consecutive sentences for convictions of §§ 841 and 924(c)).

In *Segarra*, the underlying offense was a drug trafficking crime. The "except" clause in § 924(c)(1)(A) also applies to any crime of violence. *See Jolivette*, 257 F.3d at 587 (holding that the imposition of a sentence for a violation of 18 U.S.C. § 2113(a) and (d) and the mandatory consecutive sentences of 18 U.S.C. § 924(c) does not violate the Double Jeopardy Clause). Therefore, we reject Tate's argument that the district court erred in concluding that it was required by § 924(c)(1)(A)(ii) to impose consecutive sentences for each of his convictions of using a firearm during the commission of a crime of violence, which in this case was bank robbery in violation of 18 U.S.C. § 2113.

**B**

The district court correctly concluded that the applicable guidelines range

21

was 262 to 327 months for the five robberies and 684 months for the three § 924(c) violations, which produced a total guidelines range of 946 to 1,101 months. Tate argues that it was unreasonable for the district court to sentence him to any more than 684 moths, which was the mandatory minimum sentence for the three §924(c) counts. His argument is, in effect, that it was unreasonable for the district court not to vary downward under 28 U.S.C. § 3553(a).

We disagree. This court reviews the substantive reasonableness of a district court's sentencing determination deferentially for abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008). A reviewing court must consider the reasonableness of the sentence "in its entirety, in light of the § 3553(a) factors." *United States v. Thomas*, 446 F.3d 1348, 1351 (11th Cir. 2006). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both the record and the factors in section 3553(a)." *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). The district court need not state that it "explicitly considered" or discussed each factor. *Id.* at 786. Instead, "an acknowledgment by the district court that it has also considered the defendant's arguments and the factors in section 3553(a) is sufficient." *Id.* Here, the district court expressly stated that it had considered defense counsel's argument and the

22

§ 3553(a) factors in sentencing Tate.

At the commencement of the sentencing proceedings, the district court stated it had read the presentence investigation report and that it had adopted the findings contained therein.[4]

Before pronouncing its sentence, the district court stated:

> The Court having considered the imposition of a sentence in this case under the United States Sentencing Commission Guidelines, as well as those factors outlined in 18 U.S.C., Section 3553, and the Court having heard the oral argument of counsel with respect to what sentence to impose, and the Court having concluded that a sentence under either the guidelines or pursuant to 3553 factors would be essentially the same, the Court is going to impose a sentence pursuant to the guidelines because the guideline range in this case and the designation of the Defendant as a career offender is fair, just, and reasonable given the facts and circumstances of this case, as well as the Defendant's prior record.
>
> Therefore the Court is going to impose a sentence at the low end of the guideline range, which is 946 months.

The presentence investigation report disclosed that Tate began his criminal career at the age of sixteen when he was adjudicated to be a delinquent for committing criminal mischief in the Allegheny County Juvenile Court, in

---

[4]Tate had objected to paragraph 80 of the presentence investigation report which qualified him as a career offender. However, the district court eventually overruled Tate's objection.

23

Pittsburgh, Pennsylvania. The evidence leading to this conviction shows that he collided with another vehicle while driving a stolen 1987 Chevrolet S-10 Blazer.

When Tate was seventeen-years old, he was again adjudicated to be a delinquent on August 8, 1994 for using stolen credit cards to purchase merchandise valued at $1,032.

Seven months later, while still on probation, Tate was arrested on March 12, 1995 for possession of a controlled substance. Two days later, on March 15, 1995 he was arrested for driving a stolen vehicle, attempting to elude a police officer, and reckless driving. Tate pled guilty. He received no punishment for that offense.

Four days later, on March 19, 1995, he was arrested on three counts of robbery. He was sentenced to five years of imprisonment, less one day, and five years probation as to each count. Tate was released from custody on April 20, 2000. His period of probation expired on April 28, 2005.

On October 10, 1995, he was arrested for possession with intent to deliver a controlled substance. He was sentenced to serve not less than nine months and not more than eighteen months. This sentence was ordered to run concurrently with sentence he was serving for robbery.

On October 19, 2006, he was arrested for family violence battery, simple

battery, and disorderly conduct. He pled guilty to simple battery and was sentenced to twelve months probation on January 2, 2007. While on probation for that offense, he committed the bank robberies alleged in the second superceding indictment in this case.

Because Tate was eighteen years of age at the time he committed a robbery on March 19, 1995, he is a career criminal subject to an enhancement pursuant to U.S.S.G. § 4B1.1.

The record shows that Tate's criminal career began when he was a teenager. It has escalated from unarmed theft crimes to a series of armed robberies during which he threatened his victims with violence if they did not comply with his demands. His potential for committing violent acts is also demonstrated by the fact he resisted arrest for the charges contained in the indictment.

In his request that the district court not impose any additional imprisonment for the bank robberies, Tate's defense counsel stressed his client's "unusually difficult childhood," and his educational and work experience. He also stated that Tate's mother was a drug addict and that "his father was absent right off the bat." Tate's counsel stated that his client had assisted the Government by providing information regarding a pending fraud case against another jail inmate. Tate's counsel failed to discuss, however, the undisputed evidence that Tate's criminal

25

conduct has escalated from the commission of property crimes to crimes wherein he has threatened his victims with violence if they refuse his demands. Tate's counsel has also failed to acknowledge that Tate has not profited from prior imprisonment nor has he been responsive to probation supervision. Instead, he argues that Tate will be more than one hundred years old if he survives a sentence of 946 months.

In reviewing a sentencing decision for reasonableness, this Court

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence– including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 552 U.S. 38, 597 (2007).

Tate has not challenged the reasonableness of his sentence on procedural grounds. The parties do not dispute that the applicable sentencing guideline for the robbery offenses committed by Tate is 946 to 1011 months of imprisonment. Under the advisory guidelines, the district court could have sentenced Tate to serve 65 months more than the sentence it imposed. Tate's counsel argued that, in light of the mandatory sentence of 684 months for the crime of possession of a firearm during three crimes of violence, any additional punishment for the five bank

26

robberies would be substantively unreasonable.

In *United States v. Hunt*, 526 F.3d 739 (11th Cir. 2008), this court stated: "Although we do not automatically presume a sentence within the guidelines range is reasonable, we 'ordinarily . . . expect a sentence within the Guidelines range to be reasonable.'" *Id.* at 746 ((quoting *United States v. Talley,* 431 F.3d 784, 788 (11th Cir. 2005)). Even so, "our ordinary expectation still has to be measured against the record, and the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both that record and the factors in section 3553(a). *Talley,* 431 F.3d at 788. Tate has failed to dispel our ordinary expectation. He has failed to meet his burden of showing that, in sentencing him to the low range of the applicable sentencing guidelines, the district court imposed an unreasonable sentence. Considering the totality of the circumstances, Tate's sentence was substantively reasonable.

## Conclusion

For the foregoing reasons, we affirm the judgment of conviction and the district court's sentencing decision.

**AFFIRMED**.