[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13833
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 9, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00187-CR-CAP-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH MANN PROPST,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 9, 2010)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Joseph Mann Propst appeals his convictions and sentences for two counts of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a), (b)(1)(B), and (b)(1)(C), and two counts of possession of a firearm in furtherance of a drug offense, in violation of 18 U.S.C. § 924(c).

I.

Propst challenges the district court's denial of his motion to suppress evidence seized from his apartment by law enforcement, acting pursuant to a search warrant, on March 9, 2006. He contends that the affidavit in support of the search warrant failed to establish a connection between his apartment and any criminal activity and omitted material information.

"In reviewing a district court's denial of a motion to suppress, we review the findings of fact for clear error and the application of law to those facts de novo." United States v. Lee, 586 F.3d 859, 864 (11th Cir. 2009) (internal quotation marks omitted). We construe all facts in the light most favorable to the prevailing party—in this case, the government. See United States v. Steed, 548 F.3d 961, 967 (11th Cir. 2008).

To be valid, a search warrant must be supported by probable cause. U.S. Const. amend. IV. The affidavit underlying the search warrant must "state facts sufficient to justify a conclusion that evidence or contraband will probably be

2

found at the premises to be searched." See United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." Id.

The search warrant affidavit stated that on March 9, 2006 police responded to a call that shots were fired in the area of Propst's apartment. The responding officer talked to Propst who stated that he had been shot in the left hand. He told the officer that after being shot he retrieved a gun from his apartment and fired several times at the person who shot him. The responding officer observed a trail of blood leading from the street to the door of Propst's apartment, corroborating his story. Although Propst contends otherwise, those factual allegations were sufficient to establish a connection between Propst's apartment and criminal activity. Propst's argument that the affidavit omitted material information because it did not state that the police had recovered a gun from his brother's car is without merit. That "omission" does not undermine the district court's finding that probable cause existed to search his apartment. See United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009) (stating that "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause") (internal quotation marks and

alterations omitted). Even if Propst used the gun recovered from his brother's car to return fire at the person who shot him, additional evidence of the shooting reasonably could have been found in his apartment. The district court properly denied his suppression motion.

## II.

Propst also contends that the district court erred in failing to suppress evidence seized from his apartment on October 19, 2007. A bail bondsman entered Propst's apartment on October 19 to apprehend him—after a security guard employed by his apartment complex opened his apartment door. While in the apartment looking for Propst, the bail bondsman saw weapons, drug paraphernalia, and what he believed to be heroin. The bail bondsmen contacted law enforcement and, based on that information, they obtained a warrant to search Propst's apartment. Propst argues that the bail bondsman was a state actor because the security guard who opened his apartment door was allegedly an off-duty sheriff. Because the bail bondsman did not have a warrant, Propst contends that his entry of the apartment was illegal and thus all evidence recovered as a result of his entry should have been suppressed.

"A search by a private person does not implicate the Fourth Amendment unless he acts as an instrument or agent of the government." United States v.

4

Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003). To determine whether a private person was acting as an instrument or agent of the government, we consider two factors. Those factors are: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." Id.; see also United States v. Ford, 765 F.2d 1088, 1090 (11th Cir. 1985) (holding that the district court properly denied motion to suppress where there was no evidence that the government "had any pre-knowledge of the search [or] that the agents openly encouraged or cooperated in the search").

The district court properly denied Propst's suppression motion because the bail bondsman was acting as a private individual when he entered Propst's apartment. The bail bondsman's purpose in entering the apartment was to apprehend Propst—not to assist law enforcement. Even if the security guard who opened the door for the bail bondsman was an off-duty sheriff, he was acting in his capacity as a security guard—not in his capacity as a sheriff—at the time he opened the door. Because all the parties involved in the entry were acting as private individuals, Propst's suppression motion was properly denied. See Steiger, 318 F.3d at 1045.

III.

5

Propst also contends that the district court erred in failing to suppress statements he made during custodial interviews on October 19 and 22, 2007. He argues that he invoked his right to counsel during the October 19 interview, but the interrogating officers ignored his request and continued questioning him. Propst asserts that his subsequent statements, including statements he made during a separate interview on October 22, should have been suppressed.

"When a suspect undergoing a custodial interrogation asserts his right to counsel, the interrogation must cease." Mincey v. Head, 206 F.3d 1106, 1131–32 (11th Cir. 2000). The suspect's request for counsel must be unambiguous and unequivocal. See United States v. Acosta, 363 F.3d 1141, 1152–53 (11th Cir. 2004); see also Davis v. United States, 512 U.S. 452, 461–62, 114 S. Ct. 2350, 2356 (1994) ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."); Acosta, 363 F.3d at 1152 ("If the statement is ambiguous or equivocal, then the police have no duty to clarify the suspect's intent, and they may proceed with the interrogation."). The suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459, 114 S. Ct. at 2355. If the suspect's request is subject to "two reasonable,

6

competing interpretations," it is ambiguous, and the interrogation may continue. See Acosta, 363 F.3d at 1155.

During the October 19 interview after signing a written waiver of his Miranda rights and agreeing to answer the officers' questions, Propst asked the officers whether they could make a deal with him in exchange for his cooperation and inquired about the sentence he would receive if convicted of the charged offenses. In response, one of the officers stated:

> I don't know offhand . . . . I am not a judge . . . . I am not making you any promises. I am not making you any guarantees that I can get you out of something. Cause that is not something that is going to happen. I do not have any control over that.

Propst responded "I mean, I'd rather have a lawyer around to talk or, you know what I am saying, have some papers saying something, you know." After one of the officers explained that written deals for cooperation were only available on television, Propst continued answering the officers' questions.

After a careful review of the record, we conclude that Propst's request for counsel during the October 19 interview was ambiguous and thus the interrogating officers were not required to cease questioning. Propst made a reference to a lawyer after asking the officers whether they could make a deal with him. He qualified his reference to a lawyer by saying: "you know what I am saying, have some papers saying something." Under the circumstances, a reasonable officer

7

could have concluded that Propst was not requesting to have a lawyer present during the interview but rather was requesting a written deal in exchange for his cooperation. The district court did not err in denying Propst's motion to suppress his October 19 statements. Because Propst waived his <u>Miranda</u> rights and never invoked his right to counsel during the October 22 interview, the district court also properly admitted those statements.

IV.

Propst contends that the government improperly commented on his right to remain silent during closing arguments. He takes issue with the prosecutor's comment that:

> If [Propst] were truly an innocent victim on March 9, 2006, why wouldn't he cooperate more? Why wouldn't he have done everything in his capacity to help the police find Memphis, give them a last name, give them about this girl who was driving the car allegedly who may have been a girl friend depending on the story that he is telling the police?

He also takes issue with the prosecutor's comment that "he asked, well, what do you want—he asked for some paper. He wanted some sort of deal and wouldn't even tell them anything unless he protected himself. Again, always protecting himself and his business."

Because Propst did not object to the prosecutor's comments until he filed his motion for a new trial, we review only for plain error. <u>See</u> <u>United States v.</u>

8

Newton, 44 F.3d 913, 920–21 (11th Cir. 1995). "For there to be plain error, there must (1) be error, (2) that is plain, (3) that affects the substantial rights of the party, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding." United States v. Foley, 508 F.3d 627, 637 (11th Cir. 2007) (internal quotation marks omitted).

"We subject allegations of prosecutorial misconduct to a 'two-part test.' " United States v. Campa, 529 F.3d 980, 997 (11th Cir. 2008). We determine "(1) whether the challenged comments were improper and (2) if so, whether they prejudicially affected the substantial rights of the defendant." Id. (internal quotation marks omitted). After a defendant has been arrested and advised of his right to remain silent, there is an implicit assurance that his "silence will carry no penalty." Doyle v. Ohio, 426 U.S. 610, 618, 96 S. Ct. 2240, 2245 (1976). However, "a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent," and the prosecution may comment on those statements to challenge a legal theory asserted by the defendant or to highlight material omissions in the statements. United States v. Dodd, 111 F.3d 867, 869–70 (11th Cir. 1997). The prosecution may also comment on a defendant's silence if it occurred prior to the time that the defendant was arrested and given a Miranda warning. See United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991).

9

Neither of the prosecutor's comments challenged by Propst were improper. The prosecutor's statement regarding his lack of cooperation on March 9, 2006 was not improper because it related to Propst's behavior before being arrested and advised of his <u>Miranda</u> rights. <u>See</u> <u>Rivera</u>, 944 F.2d at 1568. The prosecutor's statement regarding Propst's request for a deal during his October 19, 2007 custodial interview also was not improper. Propst did not invoke his right to remain silent during that interview, and the prosecutor's comment challenged Propst's assertion during closing that he was only a drug user—not a drug dealer. <u>See</u> <u>Dodd</u>, 111 F.3d 869–70. We conclude that no error occurred, plain or otherwise.

V.

Finally, Propst contends that the district court erred in concluding that it was required under § 924(c)(1) to impose mandatory consecutive sentences for each of his firearm convictions. He argues that his second firearm conviction in Count 7 required a mandatory minimum 25-year sentence under § 924(c)(1)(C)(i), and therefore the district court erred in imposing an additional 5-year consecutive sentence under § 924(c)(1)(A)(i) for the firearm conviction in Count 5. He asserts that under the "except" clause in § 924(c)(1)(A) the district court should have only sentenced him to 25 years imprisonment for both firearm convictions. We rejected

this argument in <u>United States v. Tate</u>, 586 F.3d 936 (11th Cir. 2009).  <u>See</u> <u>id.</u> at 947 (holding that district court did not err in sentencing the defendant to consecutive terms of imprisonment for his three firearm convictions).  As in <u>Tate</u>, the district court did not err in imposing the mandatory minimum sentence for each of Propst's firearm convictions and running them consecutive to each other.

**AFFIRMED.**