[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11687

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TRAVONTA DEANGELO RIVERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:20-cr-00025-AW-GRJ-1

_____

Before JILL PRYOR, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

Travonta Deangelo Rivers appeals his conviction for two counts of receipt or distribution of child pornography under 18 U.S.C. §§ 2252A(a)(2) and (b)(1), as well as his corresponding total sentence of 292 months' imprisonment. With respect to his convictions, Rivers argues—for the first time on appeal—that the evidence produced at trial was insufficient to support a guilty verdict. He further argues that, in calculating his offense level, the District Court incorrectly enhanced his offense level by two points under U.S.S.G § 2G2(b)(3)(F) and should have instead applied a two-point reduction under § 2G2.2(b)(1). Finding no error as to either claim, we affirm.

## I.

On September 1, 2020, a grand jury in the Northern District of Florida indicted Travonta Deangelo Rivers on one count of receipt or distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1), for activity that occurred between February 13, 2020 and May 13, 2020 (Count I).[1] The indictment also

---

[1] 18 U.S.C. § 2252A(a)(2) states: "Any person who knowingly receives or distributes (A) any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or (B) any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or

charged Rivers with one count of possession of child pornography with an intent to view for the same time period, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Count 2).[2]  Rivers was arrested on December 15, 2020.

On April 27, 2021, the grand jury returned a superseding indictment against Rivers, adding two counts.  Count Three charged that between on or about November 16, 2020, and on or about December 15, 2020, Rivers received or distributed child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1).  Count Four charged that during the same time period, Rivers possessed child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

Rivers pleaded not guilty.  A two day trial began on June 30, 2021 and ended on July 1, 2021.  Because Rivers's appeal is based on the sufficiency of the evidence against him, a concise summary of the relevant evidence presented at trial follows.

---

has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b)."

[2] According to 18 U.S.C. § 2252A(a)(5)(B): "Any person who either knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b)."

The government's first witness was Detective Matthew Holt of the Gainesville Police Department's Internet Crimes Against Children task force (the "ICAC task force"). According to Detective Holt, in December 2019, he was investigating a "peer-to-peer" network called Gnutella, looking for people sharing suspected child pornography.[3] On December 3, 2019, Holt saw a suspicious IP address,[4] and, as was his usual practice, picked two videos to verify that they contained depictions of child exploitation and that they were being shared. He then determined that this IP address belonged to Cox Communications ("Cox") and sent Cox a subpoena for the subscriber information. The IP address was associated with Cox subscriber Tammy Jenkins and was located at the Lewis Place Apartments in Gainesville, Florida. He checked the utilities information at the apartment associated with the IP address to see if they matched Jenkins's name, and they did.

Holt next testified that between March and April he continued to monitor the Gnutella network and ran across an IP address that seemed similar to the previous one because of the types of files it was offering to share. He verified that the videos included child

---

[3] Detective Holt testified that a "peer-to-peer" network is a system that allows you to connect to and download files from other computers using the same software—that is, the "peers" on the network. This type of system does not use a central server, but instead all the computers using the network connect through the software.

[4] Holt testified that an IP address is basically the physical address of your computer on the internet.

exploitation, as he had done with the first IP address, and sent another subpoena to Cox. According to Cox, the subscriber associated with that IP address was Ambrya Young, and the IP address was associated with an address in Bella Vista trailer park in Gainesville, Florida.

The next step in Detective Holt's investigation was to determine who was living at that address by conducting surveillance. The practice of the ICAC task force is to coordinate the execution of a search warrant by the SWAT team. When SWAT executed the warrant on Young's home in May 2020, no one was home. They seized a Dell desktop computer and a Toshiba laptop computer. The ICAC task force then located the suspected occupants of Young's address—Young and Rivers.[5] Young was in Pennsylvania; Rivers was in St. Johns County, Florida.

In a pre-arrest interview,[6] Rivers admitted that he was staying with Young and that he knew the computers were in the residence, but he did not claim ownership of them. Rivers mentioned a program called Mixcraft that he used to edit songs together. This program was found on the Toshiba, along with photos of Rivers

---

[5] Four young children were also believed to live in the home. They were Young's two children and Rivers's two children. All four children were aged ten or younger.

[6] Detective Holt testified that prior to the interview, he read Rivers his *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

and Young, and a photo that showed Rivers using a computer that looked like the Toshiba laptop.[7]

Holt conducted a full forensic examination of the Dell and Toshiba computers. The Toshiba contained 56 videos and two images of child abuse; the Dell contained eight videos of child pornography. On the Toshiba laptop there were multiple videos in excess of an hour; the longest one lasted 2 hours and 40 minutes. According to the examination of the computer, child pornography had been accessed on the Toshiba on May 4; it was accessed on the Dell on May 12. The most recent use of Mixcraft—the software Rivers admitted to using—was on May 10. All of these uses were within days of the execution of the search warrant. The Toshiba also showed multiple email addresses associated with Rivers, as well as one for Young.

The file list for the Toshiba laptop showed files with graphic names. For example, file names included explicit acronyms such as "PTHC" (or "pre-teen hard core"), "PEDO" (short for "pedophile"), Julyjailbait, and "PTSC" (or "pre-teen soft core"). The file list compiled from the Dell desktop computer contained files with similarly explicit names.

Detective Holt continued his investigation after an arrest warrant had been issued for Rivers. On December 9, 2020, he

---

[7] The Toshiba also showed Netflix activity, as well as I-Station, an app used by Alachua County schools.

discovered a new IP address offering to share files very similar to those on the Dell and Toshiba computers. This IP address had not shown such activity before. Holt subpoenaed Cox for the subscriber's information. The subscriber was Karen Sheppard, in Sugarfoot Oaks, Gainesville, Florida. Holt testified that he knew that Keicha Hamm, the mother of Rivers's children, lived at that address in Sugarfoot Oaks. As Sugarfoot Oaks was outside Holt's jurisdiction, the Alachua County Sheriff's Office executed a warrant on the address. Officers found Rivers at that address and arrested him. They also found an HP laptop next to the couch where Rivers had been sleeping when the warrant was executed. Rivers claimed that the laptop belonged to the apartment, but admitted to using it for YouTube and Mixcraft, both of which require internet access.[8] Rivers claimed to have obtained the laptop from a cousin. Forensic examination of the laptop revealed 43 videos and three pictures of child abuse. The file list revealed files with similar names to those on the Dell and Toshiba laptops. The HP laptop had also been used to log in to Rivers's Gmail account.

Young testified on the second and final day of the trial. She testified that she lived in Gainesville, Florida, at the Bella Vista apartments, towards the end of 2019 and into 2020. She lived there with her children, her aunt, her grandmother, and Rivers. She testified that when she was at work, Rivers supervised the children.

---

[8] Detective Holt testified that Rivers was again informed of his *Miranda* rights before he was questioned.

She further testified that Rivers used the wireless network at her apartment, that he set the network up, and that knew the passwords. According to Young, they would watch Netflix on the laptop during family nights, but other than that the computers were used by Rivers. No one else used them alone. Young testified that she left the apartment on April 19 and moved to Pennsylvania because she and Rivers had been fighting. Young's daughter had her own laptop and tablet; Young did not recall seeing her daughter use the other devices.

Jacquelyn Armstrong also testified on the final day of trial. On December 3, 2019, she lived in the Lewis Place Apartments. Specifically, she lived in the unit where Detective Holt had noticed suspicious activity. The internet at that address was in the name of her sister, Tammy Jenkins. Armstrong testified that on the night of December 3, 2019, she had a guest—Rivers. According to her testimony, Rivers was there with his computer, but she never saw him use it.

The government noted that it had a subpoena for Keicha Hamm, but they could not find her. But since the government did not believe they needed Hamm's testimony, it rested its case against Rivers. Rivers's attorney also rested without putting on a defense or making any kind of motion.

The trial concluded on July 1, 2021, and the jury returned a guilty verdict on all four counts that day. Rivers's attorney did not

move for a judgment of acquittal[9] or for a new trial,[10] nor did he challenge the sufficiency of the evidence against Rivers in any other way.

The probation officer's presentence investigation report ("PSR") assigned Rivers a base offense level of 22 pursuant to U.S.S.G. § 2G2.2(a)(2). It added two offense levels under § 2G2.2(b)(2) because the material involved a prepubescent minor; two levels under § 2G2.2(b)(3)(F) because Rivers knowingly engaged in distribution via peer-to-peer network Gnutella; four offense levels under § 2G2.2(b)(4) because the material in Rivers's possession portrayed sadistic or masochistic conduct or sexual exploitation of an infant or toddler; two offense levels under § 2G2.2(b)(6) because the offense involved the use of a computer for possession of or accessing with intent to view the material; and five

---

[9] Federal Rule of Criminal Procedure 29 provides the vehicle for such a motion: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion may also be made within 14 days after a guilty verdict or after the court discharges the jury. Fed. R. Crim. P. 29(c)(1).

[10] According to Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

offense levels because the offense involved 600 or more images.[11] These adjustments resulted in a total offense level of 37. Rivers had a criminal history score of nine and a resulting criminal history category of IV. A total offense level of 37 and a criminal history category of IV correspond to a guideline imprisonment range between 292 and 365 months.

Rivers, through counsel, made two objections to the PSR. First, he objected that he was not awarded a two-point reduction in the base offense level under U.S.S.G. § 2G2.2(b)(1) because he claimed that his conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor. The probation officer responded that Rivers's conduct was not limited to receipt or solicitation because he had used a peer-to-peer network to download child pornography, and his computer was equipped with software that would allow others to download such files.

Rivers also objected to a two-level increase in the base offense level under U.S.S.G. § 2G2.2(b)(3)(F), claiming that the indictment did not allege distribution and the government did not prove

---

[11] According to the PSR, Rivers possessed 59 videos containing child pornography. Application Note 6(b)(ii) states that "[e]ach video, video-clip, movie, or similar visual depiction shall be considered to have 75 images. If the length of the visual depiction is substantially more than 5 minutes, an upward departure may be warranted." U.S.S.G. § 2G.2, comment (n.6(B)(ii)). Even without considering the length of the videos in this case, some of which were over 60 minutes long, under Application Note 6(B)(ii), Rivers was in possession the equivalent of 4,425 photos.

it at trial.  The probation officer responded that investigators spoke to Rivers previously and that he knew that peer-to-peer platforms allowed others to download files.

At the sentencing hearing, the District Court dismissed the two possession counts (Counts 2 and 4) against Rivers, as this Court's precedent in *United States v. Phillips*, 4 F.4th 1171, 1178, (11th Cir. 2021) held that possessing child pornography is a lesser-included offense of receiving it, and that if they arise from the same incident, convictions for both cannot stand.

As relevant here, the District Court addressed the objections Rivers made to the PSR at the sentencing hearing.  The government called Detective Holt to testify as to the objections.  He explained that Rivers was the subject of an unrelated file sharing investigation in August 2011 and he was made aware that those images were being shared.  Law enforcement again addressed the issue with Rivers in May 2020.  At that time, Rivers acknowledged his understanding of peer-to-peer software.  When he was arrested in December 2020, Rivers was using the same peer-to-peer software as in May 2020—software he knew allowed others to download.  Notably, Holt testified that Gnutella, which Rivers used, does not share at all upon its initial installation—you have to allow the program to share, and designate a folder or folders for the program to share from.

The District Court overruled Rivers's objections, stating:

> I do find that the government has proven that, based on the testimony we just heard. [Rivers] . . . had familiarity with this file sharing device, or file sharing software. Understood how it works. Was aware, back in 2011, that his computer was sharing these devices – or these images and making them available to other people. And then the same thing happened in 2020, when these offenses happened. . . . I find, consistent with the testimony, that the default of that particular software is to not share, and that [Rivers] did select and elect to share those images and make them available to others.

Sent'g Tr., Doc. 101, at 27–28.

The District Court then accepted the guidelines calculations and range of 292 to 365 months' imprisonment. Rivers's mother and daughter addressed the Court to ask for leniency on Rivers's behalf, as did Keicha Hamm, the mother of Rivers's children. The Court asked Rivers if he wished to address the Court on his own behalf; he declined. Rivers, through counsel, requested a downward departure from the guidelines range; specifically, he requested the statutory minimum of five years, or even up to ten years.

The District Court imposed the lowest guidelines sentence of 292 months' imprisonment for each of the two counts, to be served concurrently with one another. His term of imprisonment was to be followed by 20 years supervised release and also included restitution, forfeiture, and a $200 special monetary assessment.

The District Court declined to grant a variance because the images in this case were horrific and caused real harm to victims. The Court was also troubled by the fact that Rivers has exhibited this behavior multiple times and had a very serious criminal history, as well as by the length of the videos involved. The District Court offered both parties the opportunity to make any additional objections, which they declined.

Rivers timely appealed. On appeal, Rivers argues that there was insufficient evidence to support a guilty verdict for receipt or distribution of child pornography under 18 U.S.C. §§ 2252A(a)(2) and (b)(1). He also appeals the increase of his base offense score by two levels pursuant to U.S.S.G § 2G2(b)(3)(F) and argues that he should have instead received a two-point reduction under § 2G2.2(b)(1).

## II.

When appropriate, we will review *de novo* the sufficiency of the evidence to support a conviction. *United States v. Dixon*, 901 F.3d 1322, 1335 (11th Cir. 2018). A post-trial motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 or a motion for a new trial under Federal Rule of Criminal Procedure 33 that challenge the sufficiency of the evidence will preserve the

sufficiency issue for review. *See United States v. Mann*, 557 F.2d 1211, 1216 n.6 (5th Cir. 1977).[12]

But where, as here, a defendant does not move for acquittal or otherwise preserve an argument regarding the sufficiency of the evidence in the court below, the defendant "must shoulder a somewhat heavier burden: we will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice." *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006). This standard requires us to find either that the record is devoid of evidence of an essential element of the crime or "that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006) (internal quotation marks omitted).

We do not distinguish between circumstantial and direct evidence. *United States v. Tate*, 586 F.3d 936, 945 (11th Cir. 2009). Circumstantial evidence is not testimony to the specific fact being asserted, but testimony to other facts and circumstances from which the jury may infer that the fact being asserted does or does not exist. *United States v. Henderson*, 693 F.2d 1028, 1031 (11th Cir. 1982). The jury must decide whether to draw the inference between the evidence presented and the fact asserted. *Id.* Further, "[b]ecause a jury is free to choose among the reasonable

---

[12] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

constructions of the evidence, it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir. 2014). If the government seeks to meet its burden of proof using circumstantial evidence, it must rely on reasonable inferences to establish a *prima facie* case. *United States v. Mieres-Borges*, 919 F.2d 652, 657 (11th Cir. 1990).

Under 18 U.S.C. § 2252(a)(2), it is unlawful to knowingly distribute a visual depiction that has traveled by any means in or affecting interstate commerce, including by computer, if producing the visual depiction involved the use of a minor engaged in sexually explicit conduct and the visual depiction is of such conduct. § 2252(a)(2). Likewise, § 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography or material containing child pornography that has been mailed or used in interstate commerce, including by computer.

Here, there was no error, let alone one that—left uncorrected—would rise to the level of a "manifest miscarriage of justice." *Greer*, 40 F.3d at 1271. At trial, Young testified that no one in the apartment, aside from Rivers, used the computers alone. None of the evidence at trial suggested that either Young or her children were responsible for the child pornography on the computers. In May 2020, when the Dell and Toshiba devices accessed child pornography, Young was living in Pennsylvania. None of the evidence presented at trial suggests that the pornography was

already on the computers when Rivers received them. Police have photographic evidence of Rivers using one of the devices. One of the devices had photos and video of him on it. Rivers had signed into his email on one of the devices.

Moreover, Rivers is not just linked to one IP address and one device containing child pornography. He is linked—in fact he is the only link—between four devices at three different addresses. In addition to Young's testimony, child pornography was found on a computer (that was laying next to Rivers while he slept) at Sheppard's house. Armstrong testified that Rivers stayed with her at her apartment one night and on that night—and only that night—two videos containing child pornography were downloaded at that IP address.

Taken together, this evidence is sufficient for a rational juror to have found beyond a reasonable doubt that Rivers violated § 2252A(a)(2)—regardless of the standard of review. Accordingly, we affirm Rivers's convictions in this respect.

### III.

When determining whether a district court properly applied a sentencing enhancement, we review "legal questions de novo, factual findings for clear error, and the district court's application of the guidelines to the facts with due deference, which is tantamount to clear error review." *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021) (quotation marks omitted). The government has the burden of proving the applicability of sections that would

enhance the offense level, and the defendant has the burden of proving the applicability of sections that would reduce the offense level. *See United States v. Martinez*, 584 F.3d 1022, 1026–27 (11th Cir. 2009).

Pursuant to U.S.S.G. § 2G2.2(b)(1), a court should decrease a defendant's base offense level by 2 points if a defendant's conduct was limited to the receipt or solicitation of sexual material involving a minor and he "did not intend to traffic in, or distribute, such material." U.S.S.G. § 2G2.2(b)(1). However, under U.S.S.G. § 2G2.2(b)(3)(F), a court should add 2 points if a defendant knowingly distributed child pornography. § 2G2.2(b)(3)(F). The commentary defines "distribution" as

> [A]ny act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, *distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing* but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.2, comment (n.1) (emphasis added).

The term "knowingly" means that the act was performed voluntarily and intentionally, and not because of a mistake or accident. *United States v. Woodruff*, 296 F.3d 1041, 1047 (11th Cir. 2002). Proof of an element of a crime may be established through

circumstantial evidence or from inferences drawn from the conduct of an individual. *See United States v. Utter*, 97 F.3d 509, 512 (11th Cir. 1996).

In *United States v. Grzybowicz*, 747 F.3d 1296 (11th Cir. 2014), we vacated a conviction for distributing child pornography under § 2252A(a)(2), where the defendant sent pictures of child pornography to his email address. *Id.* at 1309. We noted that the word "distribute" ordinarily means to deliver, give out, dispense, or disperse to others and that "peer-to-peer" networks are one method of distributing files over the internet. *Id.* at 1307–08. We also explained that the distribution requirement for sentencing enhancements under United States Sentencing Guidelines § 2G2.2(b)(3) is satisfied where a defendant posts child pornography to a publicly accessible website or makes it accessible to others by storing it in a shared folder connected to a file-sharing network. *Id.* at 1308. However, because Grzybowicz did not share the child pornography in question with anyone else or "put them where they could be shared without any further action on his part," we held that the distribution element of § 2252A(a)(2) had not been met. *Id.* at 1309–10. We specifically noted that there was no evidence that he uploaded images to a file-sharing website or that images on his computer were accessible to other users of the file-sharing website. *Id.* at 1309.

In *United States v. Carroll*, 886 F.3d 1347 (11th Cir. 2018), we held that knowingly placing or leaving files in a shared folder connected to a "peer-to-peer" network undoubtedly constitutes

distribution under § 2252(a)(2). *Id.* at 1353. We explained that the use of a "peer-to-peer" sharing program alone is insufficient to prove knowledge of distribution. *Id.* at 1354. However, we noted that it would be difficult for a defendant to claim ignorance where the "peer-to-peer" program prompts the user during installation to choose whether he wants to share the downloaded files and then involves the user in setting up a shared folder. *Id.* at 1354.

Here, we conclude that the District Court properly applied the two-level increase under U.S.S.G. § 2G2.2(b)(3)(F) and properly declined to apply § 2G2.2(b)(1). Rivers used "peer-to-peer" software to share child pornography over the internet, which we have held is a method of distribution. *Grzybowicz,* 747 F.3d at 1307–08. Moreover, the government presented sufficient evidence at the sentencing hearing that Rivers knew the "peer-to-peer" software involved sharing his downloads with other users. As part of investigations in both 2011 and 2020, officers explained that functionality to him. Finally, at least one of the "peer-to-peer" programs used by Rivers required the user, upon downloading the program, to grant the program permission to share the files, which makes it difficult for him to claim he lacked knowledge. *See Carroll*, 886 F.3d at 1354. Thus, the District Court did not clearly err in applying the § 2G2.2(b)(3)(F) enhancement, and Rivers was not entitled to a reduction under § 2G2.2(b)(1). We affirm the District Court in this respect as well.

**AFFIRMED.**