**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 06-5254**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL JAMES THOMPSON,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.  William L. Osteen, Senior District Judge.  (1:06-cr-00034)

_____

Submitted:  January 31, 2008      Decided:  February 8, 2008

_____

Before NIEMEYER and GREGORY, Circuit Judges, and HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Louis C. Allen, Federal Public Defender, John A. Dusenbury, Jr., Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Michael A. DeFranco, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael James Thompson pleaded guilty to a violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2000), felon in possession of a firearm. Thompson's plea agreement was conditioned upon his right to appeal the district court's decision denying his motion for suppression of evidence. The firearm serving as the basis for the conviction was found at Thompson's leased residence while officers were searching for a weapon used in a murder unrelated to the federal offense or Thompson. On appeal, Thompson contends that the district court erred in finding that probable cause existed to support issuance of the warrant and that a Fed. R. Crim. P. 41 error invalidated the search. Finding no error, we affirm.

I.

On June 5, 2005, Sesaley Hunter was killed in a drive-by shooting in Durham, North Carolina. Durham Police Investigator Steven Vaughan received information from two confidential informants (CI 1 and CI 2) regarding details of the shootings and location of the firearm used in the murder. Detective Vaughan applied for a search warrant and attached his affidavit in support of probable cause to issue the warrant. The affidavit states that on July 26, 2005, Vaughan interviewed CI 1, who described the weapon involved in the murder as a large weapon that looked like a rifle with wooden parts and that the weapon was located in the

- 2 -

front passenger area of the vehicle used in the murder. Eyewitnesses to the crime reported that a right side passenger fired the shots and that the sound of shots was very loud, louder than the sound of a handgun.

The affidavit states that on August 3, 2005, Vaughan interviewed CI 2 regarding the Sesaley Hunter murder. CI 2 had detailed knowledge of the murder weapon. CI 2 showed Vaughan the residence where the weapon had been hidden and gave instructions on how to locate the weapon and other firearms and controlled substances. CI 2 stated that the murder weapon was located "under the house by accessing the crawl space door at the rear of the residence" and would be found "under old lawn equipment and wrapped in a white cloth." (J.A. 22). CI 2 described the murder weapon as a "long gun." (Id.). CI 2 stated that he or she had seen the stored murder weapon, additional weapons, and drugs in the house. CI 2 also described the location of additional firearms and illegal controlled substances in the single bedroom of the residence. The affidavit stated that CI 2 "had provided reliable information in the past on numerous occasions." (J.A. 22). Finally, the affidavit included Vaughan's statement that, "based on [his] training and experience[,] firearms are relatively expensive and/or not easy to come by, [and] persons who possess firearms because of the expense involved tend to keep them for extended periods of

time." (Id.). The magistrate signed the application for the warrant on the same day, August 16, 2005.

The search was executed on August 17, 2005. Thompson was the only person present in the residence at the time of the search. Officers secured the residence by throwing "flash bang" grenades through the windows, detained and handcuffed Thompson, and conducted the search. During the search, the officers found a Colt .38 caliber special revolver under a seat cushion in the living room. The gun was unrelated to the murder.

Detective Vaughan testified at the evidentiary hearing on the motion to suppress that he attempted to serve a copy of the search warrant on Thompson the day he was arrested; however, Thompson had already posted bond before he was served. Thompson did not receive a copy of the warrant or inventory prior to his incarceration. Vaughan testified that he and Thompson planned to meet the next day regarding Thompson's cooperation in the murder investigation. Vaughan intended to deliver a copy of the search warrant and inventory at their meeting, but Thompson did not show up for the meeting. Vaughan waited for thirty minutes and left the location. Thompson later called Vaughan and said that he no longer wanted to cooperate in the murder investigation. Vaughan stated that he had no other way to contact Thompson and he did not want to leave the items posted at Thompson's residence because the affidavit contained sensitive information that could undermine the

investigation if it fell into to the wrong hands. Vaughan testified that he made "more than a half dozen" unsuccessful attempts to serve Thompson at the residence.

On August 22, 2005, Vaughan appeared before a Durham magistrate and executed the return on the search warrant. Vaughan signed the return stating under oath that he left a copy of the inventory with "the person named below." Vaughan and the Government admitted that, contrary to his statement, Vaughan had not left a copy of the search warrant or inventory with Thompson. Vaughan actually served a copy of the search warrant and inventory on Thompson six months later, in February 2006, when the United States Attorney's Office adopted the case for federal prosecution. Thompson maintained residence at the searched apartment for the two months subsequent to the search.

The district court held a hearing on Thompson's pro se motion to suppress evidence. The court found that there was probable cause to support the warrant, and that even if there was not, the good faith exception to the warrant requirement applied. At the first hearing, defense counsel raised the issue of whether Fed. R. Crim. P. 41 was violated, thereby invalidating the search warrant. Counsel later filed a motion raising non-constitutional and constitutional issues regarding the failure to comply with Rule 41. The court held a supplemental hearing on the issue of whether there were federal officers involved in the search. The district

court, in a memorandum opinion and order, held that the officers executing the warrant were local, and not federal, officers.[1] Because there was no federal involvement in the execution of the search warrant, the district court found that Rule 41 did not apply. The district court also ruled that Thompson's argument that the failure to timely serve the warrant violated Fifth Amendment due process rights failed.

## II.

Thompson argues that the search warrant was not supported by probable cause. He contends that the CI tips were not sufficiently corroborated and that a tip on its own may not be sufficient. Specifically, Thompson alleges that the information from CI 2 was not timely because the informant did not state the last time that he or she saw the evidence in the house. He asserts that based on the "vague information" from the CIs, the police were required to conduct an independent investigation to establish probable cause. The Government argues that there is no need for independent corroboration by law enforcement because there was a fair probability that the evidence would be found. Therefore, probable cause existed.

---

[1]Federal officers were present at Thompson's residence during the search, but they were there on unrelated business and had no part in the execution of the warrant.

This court reviews the district court's factual findings underlying a motion to suppress for clear error, and the district court's legal determinations de novo. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). The evidence is construed in the light most favorable to the prevailing party below. United States v. Seidman, 156 F.3d 542, 547 (4th Cir. 1998).

In reviewing the propriety of issuing a search warrant, the relevant inquiry is whether, under the totality of the circumstances, the issuing judge had a substantial basis for concluding that there was probable cause to issue the warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983). The facts presented to the issuing judge need only convince a person of reasonable caution that contraband or evidence of a crime will be found at the place to be searched. Texas v. Brown, 460 U.S. 730, 742 (1983). Appellate courts accord great deference to the district court's findings of probable cause in relation to warrants. Gates, 462 U.S. at 236.

Thompson argues on appeal both that the search warrant was not supported by probable cause and the evidence is not admissible under the good faith exception to the exclusionary rule. When a party challenges both the probable cause determination and the application of the good faith rule, this court will ordinarily address the good faith determination first, unless the case

involves the resolution of a novel question of law necessary to provide guidance to police officers and magistrate judges. See United States v. Legg, 18 F.3d 240, 243 (4th Cir. 1994).

If a warrant is found to be defective, the evidence obtained from the warrant should be suppressed "only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." United States v. Leon, 468 U.S. 897, 918 (1984). The Supreme Court reasoned, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Id. at 921.

Evidence seized pursuant to a defective warrant will not be suppressed unless: (1) the affidavit contains knowing or reckless falsity; (2) the magistrate acts as a rubber stamp for the police; (3) the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; or (4) the warrant is so facially deficient that an officer could not reasonably rely on it. United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996); United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995). The crucial element determining probable cause is "whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v.

<u>Lalor</u>, 996 F.2d 1578, 1582 (4th Cir. 1993). Information must link criminal activity to the place to be searched. <u>Id.</u> at 1583.

Thompson contends that the good faith exception should not apply in this case because the issuing magistrate merely rubber stamped the application and the supporting affidavits were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Here, CI 2's past reliability was known to the officer. <u>See</u> <u>United States v. Miller</u>, 925 F.2d 695, 699 (4th Cir. 1991). The informant met with Detective Vaughan, showed him the location of the residence, and was known to be a credible informant. The affidavit contained numerous details about the location and presence of the murder weapon and contraband items. CI 2 stated that he or she had personally observed the murder weapon and illegal narcotics at Thompson's residence and specifically where they could be found. As in <u>Lalor</u>, the informant provided very specific facts about the items present and their location. <u>See</u> <u>Lalor</u>, 996 F.2d at 1581.

Although the affidavit did not indicate on what date CI 2 had last seen the evidence or knew of its presence on the property, Vaughan averred that based on his experience and training, firearms are not quickly disposed of due to their value. In upholding a search warrant that was not supported by a statement that a potential murder weapon was known to be stored in a residence, but found during a search, this court has observed that

it is reasonable to assume that individuals store weapons in their homes. See United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988).

We conclude, viewing the totality of the circumstances, see Gates, 462 U.S. at 230, 232, that there was a "fair probability" that the murder weapon and evidence would be found at Thompson's residence. Id. at 238. Thus the warrant was valid and supported by probable cause. Even if the warrant were not supported by probable cause, there is no evidence that the magistrate merely rubber stamped the warrant application or that the warrant was so facially deficient that an officer could not reasonably rely upon it. See Leon, 468 U.S. at 923.

III.

Rule 41(f)(3) of the Federal Rules of Criminal Procedure requires an officer who has executed a search warrant to either "give a copy of the warrant and a receipt for the property taken to the person from whom . . . the property was taken" or "leave a copy of the warrant and receipt at the place where the officer took the property." "[B]y its own terms, Rule 41 applies only to federal search warrants involving 'a federal law enforcement officer.'" United States v. Clyburn, 24 F.3d 613, 616 (4th Cir. 1994) (quoting Fed. R. Crim. P. 41). Thompson claims that the officers executing

the search warrant violated his Fifth Amendment due process rights and failed to comply with Fed. R. Crim. P. 41(f)(3).

This court has held that "[t]here are two categories of Rule 41 violations: those involving constitutional violations, and all others." United States v. Simons, 206 F.3d 392, 403 (4th Cir. 2000). Ministerial violations of Rule 41, such as failing to leave either a copy of the search warrant or a receipt of items seized,[2] are non-constitutional. Id.; see also United States v. Hurwitz, 459 F.3d 463, 472 (4th Cir. 2006) (holding that Fourth Amendment does not require officers to leave copy of search warrant with property owner following warrant's execution). Such non-constitutional violations justify suppression only where the defendant is prejudiced by the violation or there is evidence that the violation was deliberate. Hurwitz, 459 F.3d at 472 n.6.

In this case, there was no evidence that Detective Vaughan deliberately failed to leave the search warrant at Thompson's residence. Instead, the evidence showed that he attempted several times to deliver the warrant and inventory to Thompson. The Government conceded that Vaughan did not leave a copy of the warrant and inventory with Thompson and that Vaughan's checked box on the return was inaccurate. Furthermore, there is no indication that Thompson was prejudiced by the lack of a copy of

---

[2]These requirements currently appear in Fed. R. Crim. P. 41(f)(3). At the time this Court issued Simons, these requirements appeared in Fed. R. Crim. P. 41(d).

- 11 -

the warrant or that Vaughan's failure was intentional or deliberate.  Cf. United States v. Pangburn, 983 F.2d 449, 455 (2d Cir. 1993) (finding no prejudice where search and seizure would not have been different if officers had complied with Rule 41 requirements).  Accordingly, we find that the district court properly denied Thompson's motion to suppress on this basis.

IV.

We affirm Thompson's conviction.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED