NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0439n.06

No. 09-3215

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 19, 2010**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| LAMONT SNEED, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:     NORRIS, MOORE, and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.**  Lamont "Dante" Sneed was convicted by a jury of conspiracy to violate a federal law and aiding and abetting armed bank robbery in connection with his involvement in a 2007 bank robbery.  Prior to trial, Sneed moved to suppress evidence that had been gathered from his car.  Sneed contended that the affidavit, used to obtain the warrant to search his car, failed to establish probable cause that evidence from the robbery would be located in his car. The district court rejected this argument and admitted the incriminating evidence at trial.  After the jury returned a guilty verdict, Sneed moved at sentencing for a downward departure and objected to a sentence enhancement factor on the grounds that it violated his Sixth Amendment rights.  The district court also rejected Sneed's Sixth Amendment argument and sentenced him to prison terms of sixty months on the conspiracy count and eighty months on the robbery count, to run concurrently.

Sneed now appeals the district court's denial of his motion to suppress and rejection of his Sixth Amendment argument. After carefully reviewing the search warrant affidavit, we have determined that the district court properly denied Sneed's motion to suppress. We have further determined that the district court properly rejected Sneed's Sixth Amendment argument. Accordingly, we AFFIRM Sneed's conviction and sentence.

## I.

Agents with the Federal Bureau of Investigation were notified on May 3, 2007, of a robbery at the Sky Bank in Pickerington, Ohio. Witnesses at the scene described a dark-colored Honda Accord, including license plate number, and three individuals. The witnesses were able to describe the robbers putting on masks prior to the robbery, the car in question used during the robbery, and two robbers exiting the bank and getting back into the vehicle after the robbery. In addition, bank employees informed agents that a suspicious-looking male, identifying himself as Dante, entered the bank a little over an hour before the robbery, asked about money orders, and exited the bank without transacting any business. Video surveillance captured the suspicious-looking male.

FBI agents searched vehicle registration records for the license plate number reported by witnesses and identified the Honda as belonging to Virginia Castro. Based on this lead, agents questioned Castro about her whereabouts on May 3. Castro informed investigators that her brother, Dante Sneed, borrowed her car on May 3 and returned it later that night. But upon further questioning, Castro changed her story and told the agents that she had used the car on May 3. Agents had also received information about an April 27 robbery of a CME credit union and determined that a car matching the description of Castro's was used in that robbery as well. Castro informed agents

that Sneed had used her car on April 27; she also eventually confirmed that Sneed used her car on May 3 during the time of the Sky Bank robbery.

Based on the information provided by Castro as well as witness statements, agents obtained and executed a warrant to search Castro's Honda Accord. Within the vehicle, they discovered a Sky Bank business card and a set of gloves matching those seen in surveillance video taken at the time of the Sky Bank robbery. Agents then decided to investigate Sneed further. They ran a criminal history and motor vehicle check and discovered that a Cadillac was registered to his name.[1] Witness statements confirmed that Sneed regularly drove the Cadillac. Agents also determined that Sneed worked the night shift at a Greyhound terminal in Columbus and that he listed the address of his mother and Castro as his home address. Castro informed the investigating agents that Sneed occasionally stayed at her home, but that he did not permanently live there. She also told agents that Sneed had children with many women and that he stayed with these women at times, though he did not have any permanent residence.

Agents then decided to interview Sneed at his place of employment on May 16. Upon arriving at the Greyhound station, they noticed a Cadillac Seville with a license plate number matching the Cadillac registered to Sneed. The agents parked their vehicles around Sneed's Cadillac and entered the Greyhound station. A Greyhound manager stated that Sneed had clocked in earlier in the night, confirming that he was present at the station. The manager then paged Sneed over the loudspeaker, asking him to report to the front desk, but Sneed never reported to the front. With the

---

[1]Agents subsequently learned that Sneed bought another vehicle on April 28, though the record is unclear as to when exactly agents discovered this information.

aid of local law enforcement officers, agents searched the facility for Sneed for over an hour, but were unable to locate him. A man matching Sneed's description was seen near the Greyhound station, though officers were unable to apprehend him. Dante Sneed never returned to the Greyhound station that night to clock out or retrieve his vehicle.

After discontinuing the search, the agents seized Sneed's Cadillac from the Greyhound parking lot and towed it to the Columbus Police Department. The next morning they applied for a warrant to search the vehicle and attached an affidavit signed by FBI Agent Erik Lauber. The affidavit stated that witnesses to the Sky Bank robbery observed two black males exit the bank and enter a Honda Accord, driven by a third black male, with Ohio plate number DWN 2893. The affidavit also stated that the vehicle was registered to Virginia Castro and that an interview with Castro revealed that Castro's brother Dante Sneed had access to the Honda Accord. In addition, Lauber's affidavit noted that a suspicious-looking male entered Sky Bank in the hours leading up to the robbery, identified himself as "Dante," and asked questions about money orders. Surveillance video revealed the suspicious-looking male to be Dante Sneed. Specifically in regards to Sneed's Cadillac, the affidavit stated that the vehicle in question was registered to Dante Sneed, per Ohio motor vehicle records. The affidavit then went on to state the following:

13. On 5/4/2007, Castro, Sneed's sister, stated that Sneed did not live at 2259 New Village Road, but instead lived in many different places. Castro did not know the exact address where Sneed stays, because it changes nightly.

14. On 5/16/2007, at approximately 10:15 pm, agents went to the Greyhound terminal to interview Sneed. Upon arrival Sneed's vehicle, Ohio Registration EBT-6523, a four door, black in color, Cadillac, was seen in the Greyhound parking lot. Agents parked their vehicles next to Sneed. Greyhound management advised that Sneed had clocked in at 9:56 pm. Greyhound management attempted to find Sneed,

even paging him over the loud speaker. Sneed did not respond. Agents and Columbus Police Department officers searched the entire terminal for Sneed but he had fled the premises. A CPD officer saw a black male, matching the height of Sneed and having similar clothing to what Sneed was wearing, walking on 4th Street away from the Greyhound terminal. Agents and CPD officer's [sic] surrounded Sneed's vehicle. It is believed that Sneed did not return to the vehicle in hopes of disassociating himself from the car and its contents.

15. On 5/17/2007, Greyhound management confirmed that Sneed never returned to work to clock out.

16. Due to Sneed having abandoned his job and his vehicle agents seized the vehicle for safe keeping. Furthermore, as Sneed does not have a full time residence it is the belief that evidence of the Sky Bank robbery may be in Sneed's vehicle.

17. Your affiant believes there is sufficient probable cause to search the 1996 Cadillac, four door Vin#: 1G6KD52Y4TU214423, with Ohio registration EBT-6523.

A magistrate judge authorized the search warrant on May 17. Prior to searching the Cadillac, agents made a final attempt to locate Sneed, but were unsuccessful. They therefore executed the warrant the following day. Within Sneed's vehicle, agents found the following: a handgun, similar in style to that used in the Sky Bank robbery; hats and bandanas, suspected of being worn in the CME bank robbery; and several pairs of gloves, also believed to have been used in the CME robbery.

Prior to trial, Sneed moved to suppress the evidence seized from his Cadillac. He argued that the warrantless seizure of his Cadillac was not supported by exigent circumstances and that the search warrant affidavit did not establish probable cause to believe that evidence from the robberies would be located in the vehicle. The district court conducted a hearing on the motions. During this hearing, Lauber testified that the agents "truly believed when a suspect, such as Mr. Sneed . . . , did not have a residence of his own . . . that it was much easier for him to place evidence in a vehicle . . . ." Tr. of Hr'g on Def.'s Mot. to Suppress at 67:7–10, United States v. Sneed, 2:07-cr-00122

(S.D. Ohio Aug. 28, 2007). The court ultimately denied both motions. It determined that a warrant was not necessary to seize the Cadillac, so long as the agents had probable cause to believe that it contained contraband. As to the search warrant affidavit, the district court determined that the affidavit taken as a whole set forth probable cause to believe that items related to the robbery would be found in the Cadillac.

After a three day trial, the jury found Sneed guilty on Count One of conspiracy to commit an offense against the Unites States and on Count Two of aiding and abetting in armed bank robbery. The jury acquitted Sneed of the charges in Count Three, aiding and abetting in the possession of a firearm in furtherance of a crime. The Presentence Investigation Report ("PSR") calculated Sneed's total offense level to be 28, which included a five level enhancement for use of a firearm in the Sky Bank robbery, and his criminal history category to be III. Prior to sentencing, Sneed filed a motion for a downward departure. Sneed specifically contended that a criminal history category of III overstated the seriousness of his criminal history. He also argued that the five level enhancement for use of a firearm in the robbery violated his Sixth Amendment rights because the jury had acquitted him of Count Three, which charged Sneed with aiding and abetting the possession of a firearm in furtherance of a crime, though Sneed conceded that this court had already addressed this argument in *United States v. White*, 551 F.3d 381 (6th Cir. 2008) (en banc).

The district court acknowledged Sneed's Sixth Amendment argument and determined that the firearm enhancement was justified because Count Two charged that Sneed and his co-conspirators used a dangerous weapon in the Sky Bank robbery. The court then adjusted the criminal history category to II and sentenced Sneed to sixty months imprisonment on Count One and eighty

months on Count Two, to be served concurrently. Sneed now brings this appeal, challenging the

district court's determination that the search warrant affidavit was supported by probable cause and

the district court's use of the firearm sentence enhancement. Sneed does not challenge the district

court's determination on the warrantless seizure of his vehicle nor does he challenge any other aspect

of his sentence.

## II.

We begin by addressing Sneed's argument that the warrant to search his Cadillac lacked

probable cause. This court reviews legal conclusions as to the existence of probable cause de novo.

*United States v. Williams*, 544 F.3d 683, 685 (6th Cir. 2008). We uphold factual findings unless the

findings are clearly erroneous. *Id.* We also give great deference to the issuing judge's determination

of probable cause, and we will not disturb this determination unless it was arrived at arbitrarily.

*United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009). Further, we will uphold the district

court's decision to deny a motion to suppress if any reason exists to justify the denial. *Id.*

The Fourth Amendment requires a showing of probable cause, supported by oath or

affirmation, before a warrant may legally issue. *United States v. McPhearson*, 469 F.3d 518, 523

(6th Cir. 2006) (quoting U.S. Const. amend. IV). In determining whether this requirement has been

satisfied, the issuing magistrate must "make a practical, common-sense decision whether, given all

the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence

of a crime will be found in a particular place." *United States v. Lapsins*, 570 F.3d 758, 763–64 (6th

Cir. 2009)(internal quotations omitted). The magistrate must have a substantial basis for concluding

that the search will uncover evidence of wrongdoing. *McPhearson*, 469 F.3d at 523–24. In applying

the probable cause standard, the magistrate uses a practical standard, based on factual and practical considerations of every day life, rather than a technical standard. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). In the event that a warrant lacks probable cause, evidence obtained from the illegal search may still be used at trial if the search meets the requirements of the good faith exception. *McPhearson*, 469 F.3d at 523.

**A.**

Sneed challenges the search warrant affidavit for failing to establish the required nexus between his Cadillac and evidence of the bank robbery. He does not contend that probable cause was lacking to establish his involvement in the bank robbery. Nor does he challenge the veracity of the information contained in the affidavit. Accordingly, our analysis focuses on the sole issue of whether Lauber's affidavit sufficiently set forth probable cause to believe that evidence of the robbery would be located in the Cadillac.

When a warrant application seeks to search a particular location, the affidavit must establish a sufficient "nexus between the place to be searched and the evidence to be sought." *Brooks*, 594 F.3d at 492 (internal quotations omitted). It is not enough that the owner of the property is suspected of a crime; rather, the affidavit must show reasonable cause to believe that contraband sought will be found in the property to be searched. *Id.* The Sixth Circuit, along with numerous other Circuits, has consistently held that a nexus can be inferred based on the nature of the evidence sought and the type of offense that the defendant is suspected of having committed. *See, e.g.*, *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) ("[I]t was reasonable to infer that evidence of illegal activity would be found at Gunter's residence."); *Williams*, 544 F.3d at 688; *see also United States*

*v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) ("Probable cause can be . . . inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment, and normal inferences about where a criminal might hide [evidence].'"); *United States v. Tate*, 586 F.3d 936, 943 (11th Cir. 2009) ("'Evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence.'"); *United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009) ("'Warrants may be issued even in the absence of direct evidence linking criminal objects to a particular site.'"); *United States v. Thompson*, 263 F. App'x 374, 378 (4th Cir. 2008) (per curiam) ("[T]his court has observed that it is reasonable to assume that individuals store weapons in their homes."); *United States v. Ribeiro*, 397 F.3d 43, 49 (1st Cir. 2005) ("The probable-cause nexus . . . 'can be inferred from the type of crime, the nature of the items sought . . . .'").

In applying the nexus requirement, this court has held that an affidavit established the required nexus between the defendant's home computer and images of child pornography where the affidavit showed that (1) the images were uploaded in the early morning hours, at a time when the defendant was likely to be home, (2) pornographic images are more likely to be stored on a home computer, where there is relatively more privacy, and (3) the IP address connected with the images was traced to a residential cable modem. *Lapsins*, 570 F.3d at 766. The affidavit in *Lapsins* established a nexus even though it did not specifically state that the IP address was registered to the defendant's name. *Id.* The nexus requirement was also met where the affidavit stated that the defendant's residence contained a strong odor of marijuana and that the defendant was arrested at his residence with $1,000 in his pocket. *Brooks*, 594 F.3d at 494–95. This information provided

probable cause to believe that contraband would be located in the defendant's home, even though the affidavit contained some amount of stale information. *Id.* at 489, 495. Furthermore, this court has also held that a magistrate judge could infer that instrumentalities of criminal activity would be found at a defendant's residence where the affidavit contained information implicating the defendant in a robbery. *Williams*, 544 F.3d at 688.

On the other hand, probable cause was not established, and the affidavit failed to show a nexus between the residence and evidence of drug activity, in a case where the defendant was arrested at his residence on an assault charge and crack cocaine was discovered on his person. *McPhearson*, 469 F.3d at 524. The *McPhearson* court noted that an inference of drug activity is permissible in some cases, but was not permissible in that particular case because there was no independent corroborating evidence that the defendant was a known drug dealer. *Id.* at 524–25. Similarly, probable cause was not established where the affidavit in support of the warrant to search the defendant's residence contained uncorroborated statements from an informant that the informant had purchased drugs from the defendant. *Higgins*, 557 F.3d at 389–90. The *Higgins* court noted that the affidavit contained no information as to whether the informant had been inside the defendant's apartment or seen drugs at the defendant's home. *Id.* at 390.

Based on the above-surveyed case law, this case presents a close call as to whether Lauber's affidavit established a nexus between Sneed's Cadillac and evidence of the bank robbery. Yet reading the affidavit as a whole, and based on the totality of the circumstances, we conclude that it set forth sufficient facts to meet the nexus requirement. *See Lapsins*, 570 F.3d at 763–64 (stating the standard for evaluating whether probable cause exists). Sneed does not dispute that the

information contained in Lauber's affidavit clearly established probable cause to believe that Sneed was connected with the Sky Bank robbery. A reading of the affidavit in its entirety also supports an inference that Sneed would have kept instrumentalities from the robbery in his Cadillac. *See Gunter*, 551 F.3d at 481 (stating that an inference can be drawn that a suspect will keep criminal instrumentalities in his place of residence).

First, the affidavit established that Sneed did not live at the address that he had listed with motor vehicle records and that his address "change[d] nightly." The affidavit also established that the Cadillac was registered to Sneed and that the vehicle was discovered at a location where Sneed was known to have been only moments before the vehicle's discovery. In addition, the affidavit stated that the affiant believed that Sneed intentionally tried to "disassociate" himself from the vehicle and its contents and that Sneed never returned for the vehicle once agents went in search of him. Further, Sneed had a known history of storing instrumentalities from the robbery in vehicles, as the search of Castro's Honda Accord revealed. Moreover, the affidavit stated that because Sneed did not have a permanent residence, the affiant believed that evidence from the Sky Bank robbery, which occurred only fourteen days prior to the seizure of the car, may be located in the Cadillac. Finally, criminal instrumentalities from a robbery are the type of evidence that an individual in Sneed's position, who lacked a permanent residence, would likely keep in his vehicle. *See Williams*, 544 F.3d at 688. Taken as a whole, this information provides a substantial basis from which a magistrate judge could infer that instrumentalities from the Sky Bank robbery would be located in

Sneed's Cadillac. *See Stearn*, 597 F.3d at 554; *Tate*, 586 F.3d at 943; *Orozco*, 576 F.3d at 749; *Gunter*, 551 F.3d at 481.

Further, the affidavit in this case is distinguishable from cases where the nexus requirement was not satisfied. In *McPhearson*, we determined that the affidavit did not establish a nexus because the affidavit did not provide independent corroborating evidence that the defendant was suspected of having engaged in the criminal activity for which evidence was sought. 469 F.3d at 524. However, the affidavit in this case contained plenty of independent corroborating evidence to establish that Sneed was involved in the Sky Bank robbery. Specifically, the affidavit stated that Sneed had access to the getaway vehicle used in the robbery, that Sneed suspiciously entered the bank a mere hour and one-half before the robbery, and that evidence of the Sky Bank robbery was found in the getaway vehicle. Further, unlike the facts in *Higgins*, where the affidavit was based on uncorroborated informant statements, the affidavit in this case was based on facts directly determined by the investigating officers. *See* 557 F.3d at 390.

As a final matter, we are unpersuaded by the case law that Sneed advances to support his position. Sneed first relies on *United States v. Bethal*, 245 F. App'x 460 (6th Cir. 2007), where this court found that the affidavit, containing general facts about the defendant's status as a gang member and connecting him to other gang members whose residences contained weapons, did not establish probable cause to believe that weapons would be found in the defendant's home. However, unlike the facts in *Bethal*, the affidavit in this case contained specific information linking Sneed to a specific robbery and also contained a statement that officers believed that Sneed was intentionally

distancing himself from incriminating evidence in his vehicle. Finally, Sneed cites to *United States v. Savoca*, 761 F.2d 292 (6th Cir .1985), where this court determined that a nexus was not established between a bank robbery and a motel room. Yet in that case the motel room was located 2,000 miles away from the robbery and the affidavit did not contain information on when the bank robbery had occurred. *Savoca*, 761 F.2d at 295. In this case, Sneed's vehicle was located in the general area of the robbery and was searched only days after the robbery. Based on the totality of the circumstances, and using a common-sense approach, we hold that Lauber's affidavit sufficiently established a nexus between Sneed's Cadillac and evidence of the Sky Bank robbery.

**B.**

Even if the affidavit does not meet the nexus requirement, we would nonetheless uphold Sneed's conviction under the *Leon* good faith exception. Items recovered pursuant to an invalid search warrant do not have to be excluded if the search meets the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc). The good faith exception applies if the evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Carpenter*, 360 F.3d at 595 (quoting *Leon*, 468 U.S. at 922). The objectively reasonable reliance standard requires less than the showing required for probable cause. *Id.* We have recognized four situations under which the good faith exception does not apply: (1) when the affidavit contains a known or reckless falsity; (2) when the magistrate who issued the warrant wholly abandoned his or her role; (3) when the affidavit lacks an indicia of probable cause such that reliance on it is

objectively unreasonable; and (4) when the warrant is facially invalid such that it cannot reasonably be presumed valid. *McPhearson*, 469 F.3d at 525. Sneed argues that the third situation applies to this case. To determine whether agents' reliance on the affidavit was objectively unreasonable, we must inquire into whether the warrant was issued on the basis of a "bare bones" affidavit; that is, whether the affidavit merely contained suspicions and beliefs without any underlying factual information on the veracity or reliability of the information. *Id.* at 525–26.

In addressing whether officers' reliance on a warrant was objectively unreasonable, this court has found that the good faith exception applied where the affidavit contained at least some nexus between the residence to be searched and the illegal activity. *Carpenter*, 360 F.3d at 595–96. The *Carpenter* court noted that the officers' reliance on the invalid search warrant was objectively reasonable because the affidavit in support of the warrant stated that marijuana was growing near the residence and that a road connected the residence to the growing marijuana plants. *Id.* Therefore, reasonable officers could have believed that the affidavit supported the issuance of the warrant. *Id.* at 596. Similarly, the good faith exception applied where officers could have inferred a nexus between the residence to be searched and evidence of known drug activities. *Higgins*, 557 F.3d at 391. The *Higgins* court noted that even though the affidavit did not meet the probable cause standard, a reasonably well trained officer would not have known the search was illegal based on information provided to the officers. *Id.*

On the other hand, the good faith exception did not apply where the supporting affidavit provided no information establishing a connection between the place to be searched and evidence

of drug activity. *McPhearson*, 469 F.3d at 526; *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005). As previously noted, the affidavit in *McPhearson* contained nothing more than the fact that the defendant was arrested at his residence and that crack cocaine was found in his pocket; it contained no information indicating that the defendant was known to have participated in drug trafficking. *Id.* Similarly, the affidavit in *Laughton* simply stated that a confidential informant had purchased drugs on multiple occasions, but did not contain information as to whether the informant had purchased drugs from the defendant or whether the informant had seen drugs at the particular location to be searched. 409 F.3d at 751. Because the affidavit contained no information connecting the drug activity to the residence, a reasonable officer could not have believed that it established probable cause. *Id.* at 749, 751.

Applying the above case law to this case, we believe that the good faith exception applies here. To begin with, this court has noted that reasonably well trained officers may infer a nexus between a place to be searched and items sought, even when the affidavit fails to establish probable cause. *See Higgins*, 557 F.3d at 391. Further, unlike the affidavits in *McPhearson* and *Laughton*, the affidavit in this case contained some indication of a nexus between Sneed's Cadillac and evidence of the Sky Bank robbery. Specifically, paragraph thirteen stated that officers believed that Sneed tried to distance himself from the Cadillac and its contents. And Sneed does not challenge the veracity of this statement. In addition, paragraph sixteen stated that Sneed did not have a permanent residence and that the affiant therefore believed that evidence of the robbery may be located in Sneed's vehicle. Moreover, the affidavit connected Sneed to the vehicle by noting that

the vehicle was discovered at Sneed's place of employment, only moments after Sneed reported for work. In sum, this is not the type of "bare bones" affidavit which this court has found lacking in any indicia of probable cause. *See McPhearson*, 469 F.3d at 525–26.

## III.

We now move to Sneed's Sixth Amendment argument regarding his sentence enhancement. Sneed claims that his Sixth Amendment rights were violated by the district court's use of the firearm enhancement because the jury acquitted him of the charge related to possession of a firearm. Sneed concedes that this issue has been addressed by the en banc court in *United States v. White*, 551 F.3d 381 (6th Cir. 2008) (en banc), and states that he advances the argument only for the purposes of preserving it for further appellate review. In *White*, this court noted that "[s]o long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range." 551 F.3d at 385. In this case, Sneed does not contend that his sentence exceeds the maximum allowed by the jury's verdict. Further, the district court provided adequate explanation as to why it enhanced Sneed's sentence for use of a firearm. We therefore affirm Sneed's sentence.

## IV.

For the foregoing reasons, we AFFIRM Sneed's conviction and sentence.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.**  I agree with

Part III of the majority opinion upholding Sneed's sentence in light of *United States v. White*, 551

F.3d 381 (6th Cir. 2008) (en banc).  I would uphold the search of the Cadillac solely on the basis of

the good-faith exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897,

922 (1984).  Therefore, I concur in the judgment.