RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0097p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 10-5638

*v.*

JESSE CARNEY, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 09-00012-001—Thomas B. Russell, District Judge.

Decided and Filed: April 10, 2012

Before: DAUGHTREY, COLE, and ROGERS, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Frank W. Heft, Jr., Patrick J. Bouldin, OFFICE OF THE FEDERAL DEFENDER, Louisville, Kentucky, for Appellant. Monica Wheatley, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge. Defendant Jesse Carney, Jr. was sentenced to 51 months' imprisonment after entering a conditional guilty plea to charges of being a felon in possession of a firearm, making counterfeit money, and passing counterfeit money. Carney appeals the district court's order denying his motion to suppress evidence seized from an apartment and car pursuant to a search warrant. The affidavit supporting the search warrant described evidence that someone using the car in question tried to pass counterfeit bills of different denominations at different times, that the car and residence

1

were Carney's, that the car was seen in front of the residence, and that Carney was identified as having attempted to pass a counterfeit bill on one of the occasions. Contrary to Carney's contention on appeal, there was probable cause to search the residence and car. Carney's other contentions are also without merit.

I.

On November 21, 2008, Aaron Williams sold his Nintendo Wii for $300 to a man in a bank parking lot. After the transaction was complete and the buyer drove away in his white Chevy SUV, Williams realized that the three $100 bills he received were counterfeit. Williams called the police and told them about the incident. Later, either Williams or his mother, who was also present during the sale of the Wii, told the police that the same white Chevy SUV was parked in front of 4902 Saddlebrook Court and that it had license plate number 871-JKC. The police showed Williams and his mother three photos, and both identified Jerry King as the man they thought had given Williams the counterfeit money. Carney's picture was not included in the photo lineup.

In a separate incident on November 28, 2008, a man tried to use a counterfeit $20 bill to purchase merchandise at a Circle K convenience store. The cashier was on alert for such bills because the store had unknowingly accepted counterfeit $20 bills in the past. When the cashier became suspicious of the bill, he called his manager, Amy Forsythe, over to the counter. Forsythe looked at the bill and told the customer that it was counterfeit. The customer took the counterfeit bill, paid with another bill, and left the store. Forsythe saw the customer leave the store, get into a white Chevy SUV with license plate number 871-JKC, and drive away.

Forsythe later spoke to Secret Service Agent Ken McNaughton and Louisville Police Detective Stephen Glauber about the incident. In describing what had happened, Forsythe said that when she told the customer that the bill was counterfeit, he snatched it from her hands and fled the store. Agent McNaughton showed Forsythe three photos and she identified Carney as the customer who presented the counterfeit bill. Forsythe also told McNaughton that on two separate occasions she and her employees unknowingly accepted counterfeit $20 bills as payment from Carney for merchandise.

The cashier at the Circle K, however, identified another individual from the same photo lineup. Jerry King's picture was not included in this photo lineup.

Agent McNaughton watched the surveillance video from the Circle K and confirmed that the customer appeared to be Carney, although McNaughton later acknowledged that the customer could have been King. Agent McNaughton continued his investigation and learned that the white Chevy SUV was registered to a Jenny McQuillen who lived at 4902 Saddlebrook Court.

Agent McNaughton conducted surveillance of 4902 Saddlebrook Court and saw Carney get into the white Chevy SUV and drive away. Agent McNaughton followed Carney as he drove to the Jefferson County Probation and Parole Office. Agent McNaughton later contacted a parole officer who confirmed that Carney had visited the office that day and had previously listed his residence as 4902 Saddlebrook Court #1.

On December 8, 2008, Agent McNaughton, Detective Glauber, and two other police officers drove to 4902 Saddlebrook Court #1 and knocked on the door. Carney opened the door. The officers asked Carney if they could search the apartment and the white Chevy SUV, but Carney said no. The officers then asked Carney questions regarding the alleged counterfeit transactions they had been investigating, but Carney refused to answer their questions. Based on the evidence they had gathered to date, the officers determined that they had probable cause to arrest Carney on state counterfeiting charges related to the Circle K incident. They arrested Carney; Agent McNaughton and Detective Glauber then transported Carney to the Jefferson County Detention Center before going to get a warrant to search the apartment and the white Chevy SUV. The two other officers remained at the scene in order to secure the apartment.

While they waited for Agent McNaughton and Detective Glauber to return with the search warrant, the two officers heard someone inside the apartment. The officers called Agent McNaughton and told him what they heard. Agent McNaughton asked Carney if anyone had permission to be in the apartment and Carney said no. Based on this information, and a concern that someone might be inside destroying evidence, the officers entered the apartment and found James Dewitt. The officers detained Dewitt,

interviewed him, checked him for weapons, and then released him.  The officers did not search the apartment at that time and nothing they saw while in the apartment was included in the affidavit for the search warrant.

Detective Glauber wrote an affidavit in order to obtain a warrant to search the apartment and the white Chevy SUV.  In the affidavit, Detective Glauber discussed, at length, the transactions on November 21 and 28, as well as the evidence gathered through the subsequent investigation.  Detective Glauber stated that the police were looking for counterfeit money, anything used to make it, and a Nintendo gaming system, among other things.  A state court judge issued the search warrant, and the police executed it.

Agent McNaughton later testified that, during the search of the apartment, the police found a handgun in the tank of a toilet, but no counterfeit money.  A Presentence Report (PSR) prepared later in this case, however, states that the police found two firearms, ammunition, several counterfeit $100, $20, and $10 bills, and an all-in-one printer with genuine federal reserve notes taped to the scanner bed.  The PSR also states that the police found a third firearm in the white Chevy SUV.  In a filing before the district court, the Government stated that the police also found a Nintendo Wii in the apartment.

A federal grand jury indicted Carney, charging him with being a felon in possession of a firearm in violation 18 U.S.C. § 922(g), making counterfeit money in violation of 18 U.S.C. § 471, and passing counterfeit money in violation of 18 U.S.C. § 472.

Carney moved to suppress the evidence obtained from the apartment and the white Chevy SUV, arguing that the police seized this evidence unlawfully.  After an evidentiary hearing, the district court granted Carney's motion, finding that the search warrant was not supported by probable cause.  However, after the Government moved for reconsideration, the district court found that the good faith exception to the warrant requirement applied.  Therefore, the district court refused to bar the admission of the evidence found as a result of the search warrant.

Carney then entered a conditional guilty plea to the charges against him, reserving the right to appeal the district court's ruling with respect to his suppression motion.  The district sentenced Carney to 51 months' imprisonment.

II.

On appeal, Carney argues that the district court should have granted his suppression motion for three reasons:  (1) the police did not have probable cause to arrest him; (2) the search warrant was constitutionally defective because it was based on misstatements in and omissions from the supporting affidavit; and (3) the search warrant was not supported by probable cause, and the good faith exception to the warrant requirement does not apply.  All of Carney's claims lack merit.

A.

As an initial matter, it is immaterial, for purposes of this appeal, whether the police had probable cause to arrest Carney on state counterfeiting charges.  The police did not seize any evidence at the time of, or incident to, Carney's arrest, and thus did not use anything from that arrest as a basis for obtaining the search warrant.  Although two officers entered the apartment soon after arresting Carney, they did not search the apartment at that time and nothing they saw while in the apartment was included in the affidavit for the search warrant.  In short, the search warrant was issued based on evidence gathered independent of Carney's arrest.  Therefore, Carney's argument that the district court should have granted his suppression motion because the police did not have probable cause to arrest him is without merit.

B.

Carney's argument that the search warrant was constitutionally defective because it was based on misstatements in and omissions from the supporting affidavit is likewise without merit.  While Carney points to some alleged misstatements and omissions, he has failed to show that Detective Glauber, the affiant, made any of these statements and omissions knowingly and intentionally or with reckless disregard for the truth, as

required to invalidate the search warrant. *See Delta Eng'g v. United States*, 41 F.3d 259, 262 (6th Cir. 1994) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

First, Carney points to Detective Glauber's statement in his affidavit that, with respect to the Circle K incident, Carney "took the bill from Ms. Forsythe to conceal the evidence of the counterfeit money and fled the store." Carney argues that the surveillance video from the Circle K shows that the suspect did not flee the store and that Agent McNaughton was aware of this fact before the search warrant was issued because he had seen the video. Detective Glauber, however, neither watched the video nor discussed this issue with Agent McNaughton before completing the affidavit. Detective Glauber made the statement in question because Forsythe told him specifically that the suspect "snatched the bill and fled the scene." While Forsythe's characterization of the suspect's departure from the Circle K may have been inaccurate, Carney has not shown that Detective Glauber relayed this potentially false statement knowingly and intentionally or with reckless disregard for the truth.

Second, Carney takes exception to Detective Glauber's statement in his affidavit that Agent McNaughton "confirmed" that Carney appeared in the surveillance video, noting that Agent McNaughton later acknowledged that the customer could have been Jerry King. This contention, however, focuses on semantics and disregards the fact that Detective Glauber's understanding was "that Agent McNaughton had reviewed that video . . . [and] believed that the person—the suspect passing that bill was Mr. Carney." As the district court put it, Detective Glauber "had an appropriately accepted belief that this statement was in fact true." Since Carney puts forth no evidence to the contrary, his allegation that Detective Glauber's statement was made with a reckless disregard for the truth is without merit.

Third, Carney notes that Detective Glauber's affidavit failed to mention that the Circle K cashier did not identify Carney from the photo lineup and instead, identified another individual. Carney argues that this omission shows that Detective Glauber had a reckless disregard for the truth. Carney, however, cites no evidence either to support this allegation or otherwise to refute the district court's finding that this omission may

have been nothing more than a mere oversight.  Simply put, Carney has not met the "higher standard" of showing that this omission rendered the search warrant constitutionally defective. *See United States v. Khami*, 362 F. App'x 501, 506 (6th Cir. 2010).

Fourth, Carney argues that Detective Glauber falsely stated in his affidavit that "Mr. Williams called on 12-02-08, and reported that he had located the exact vehicle that Jerry King was driving parked in front of 4902 Saddlebrook Ct. that was bearing Kentucky tag #871JKC." Carney claims that Williams's mother actually placed this call. However, it is not entirely clear from the record whether Williams or his mother called the police and reported this information.  But assuming that Carney is right, and Williams's mother was the person who made this call, Carney still cites no evidence to show that Detective Glauber made this statement knowingly and intentionally or with reckless disregard for the truth.

Fifth, Carney highlights Detective Glauber's statement in his affidavit that Forsythe said "that on two (2) separate occasions she and her employees unknowingly received counterfeit $20.00 USD bills as payment for merchandise from [Carney]." Carney argues that this statement was "materially misleading and should not have been included in the affidavit."  However, Agent McNaughton testified that Forsythe told him this exact information and that he relayed this information to Detective Glauber. Therefore, Carney's argument that there is no evidence that he passed counterfeit bills at the store on multiple occasions is baseless.

Carney does however identify one flaw in Detective Glauber's affidavit. Detective Glauber stated that Agent McNaughton reviewed the surveillance video from the Circle K and confirmed that Carney "appeared in the video passing the counterfeit $20.00 USD *bills* on the *dates* in question."  Carney is correct that this implies that Agent McNaughton saw Carney pass counterfeit $20 bills at the store on multiple occasions, when, in fact, the surveillance video only depicts the transaction that occurred at the Circle K on November 28, 2008.  Nevertheless, Carney puts forth no proof that

Detective Glauber had a reckless disregard for the truth or made this statement in order to intentionally mislead the magistrate judge who issued the search warrant.

In sum, Carney's argument that "[t]he search warrant was rendered unconstitutional by misstatements in the affidavit and an omission from it" is without merit.

## C.

Finally, the district court properly refused to suppress the evidence found as a result of the search warrant. Although the district court relied on the good faith exception to the warrant requirement, the search warrant issued in this case was supported by probable cause because the supporting affidavit contained enough facts to indicate a fair probability that evidence of a crime would be located in both the white Chevy SUV and the apartment. That is all that is required. *See United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006).

The affidavit described two separate transactions involving different denominations of counterfeit money that occurred in the same area and within seven days of each other. The affiant noted that, on both occasions, the individual who allegedly proffered the counterfeit money drove a white Chevy SUV with license plate number 871-JKC. The affidavit stated that this car was seen parked in front of 4902 Saddlebrook Court and was registered to an individual who lived at an apartment at that address. The affidavit stated that Forsythe picked Carney out of a photo lineup as the individual who passed a counterfeit $20 bill at the Circle K and then left the scene in a Chevy SUV with license plate number 871-JKC. The affidavit stated that Forsythe told Agent McNaughton and Detective Glauber that on two separate occasions she and her employees unknowingly received counterfeit $20 bills as payment for merchandise from Carney. The affidavit stated that Agent McNaughton confirmed that Carney appeared in the Circle K surveillance video. The affidavit stated that the police confirmed with both the Kentucky Department of Probation and Parole and state court records that Carney's personal residence was 4902 Saddlebrook Court #1. Finally, the affidavit stated that the police drove to 4902 Saddlebrook Court #1, knocked on the door, and

Carney answered the door. Taken together, all of this information reveals interweaving connections among Carney, multiple alleged transactions involving different denominations of counterfeit money, the white Chevy SUV, and the apartment. In other words, based on the totality of the circumstances, the supporting affidavit established a fair probability that evidence of counterfeiting would be found in the apartment and car.

Thus several investigative facts independently pointed to the probable presence of evidence of counterfeiting in the Chevy. The car was driven by a person proffering counterfeit money on at least two separate occasions. Moreover, several investigative facts pointed to the probable presence of evidence of counterfeiting in the apartment. The car that was linked to two instances of using counterfeit money was seen parked in front of the apartment and was registered to an individual who lived at an apartment at that address. The police had evidence to believe that Carney was the perpetrator of the Circle K incident, and Carney resided in the apartment.

As we explained in *United States v. Sneed*, 385 F. App'x 551, 556 (6th Cir. 2010):

> a nexus can be inferred based on the nature of the evidence sought and the type of offense that the defendant is suspected of having committed. *See, e.g., United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) ("[I]t was reasonable to infer that evidence of illegal activity would be found at Gunter's residence."); . . . *see also United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) ("Probable cause can be . . . inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment, and normal inferences about where a criminal might hide [evidence].'"); *United States v. Tate*, 586 F.3d 936, 943 (11th Cir. 2009) ("'Evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence.'"); *United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009) ("'Warrants may be issued even in the absence of direct evidence linking criminal objects to a particular site.'"); *United States v. Thompson*, 263 F. App'x. 374, 378 (4th Cir. 2008) (per curiam) ("[T]his court has observed that it is reasonable to assume that individuals store weapons in their homes."); *United States v. Ribeiro*, 397 F.3d 43, 49 (1st Cir. 2005) ("The probable-cause nexus . . . 'can be inferred from the type of crime, the nature of the items sought. . . .'").

Just as a thief may be expected to have stolen goods in his home, *see Tate,* 586 F.3d at 943, or a drug dealer may be expected to have evidence of drug activity in his home, *see Gunter*, 551 F.3d at 481, a purveyor of counterfeit bills of different denominations on different occasions may be expected to have evidence of that activity in his home.

This case is accordingly different from *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006), in which we upheld suppression of drugs and firearms found pursuant to a residential search where the affidavit provided no additional fact beyond the discovery of crack cocaine in the pocket of an arrestee away from his residence. A case where someone was caught one time passing a counterfeit bill might be closer to *McPhearson* because it might not be particularly likely that evidence would be at the person's home. Here there is much more suggesting such a likelihood; the apartment is the residence of someone the evidence shows is a purveyor of different denominations of counterfeit currency at different times, and the car that he uses for those activities is parked at the residence.

Finally, even if we assume that there was no probable cause for the search, the affidavit at least contained a minimally sufficient nexus between the alleged illegal activity in this case and the places to be searched to support an officer's good faith belief in the warrant's validity. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). We thus agree with the district court that the searches of both the car and the apartment were constitutionally valid.

III.

For the foregoing reasons, we affirm the judgment of the district court.